ALICE M. BROWN, administratrix, vs. UNITED STATES
FIDELITY AND GUARANTY COMPANY
(and a companion case[1]).

Suffolk. November 7, 1957. — January 8, 1958.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE,
& CUTTER, JJ.

Insurance, Accident insurance; Life insurance: double indemnity. Proxi-
mate Cause. Evidence, Opinion: expert.

At the trial of an action against an insurance company to recover under
a policy paying benefits if the insured's death resulted "independently"
of all other causes from bodily injury effected solely by accidental
means and not "directly or indirectly" from disease, an opinion of a
physician, given in answer to a hypothetical question, that an automo-
bile accident was "directly the cause of" the death of the insured,
who had long suffered from hypertension and heart disease and who
died more than a month after his discharge from a hospital to which
he and his wife had been admitted following injuries sustained by them
in the accident, and the next day after he returned to the hospital to
take his wife home but was readmitted as a patient "complaining of
pain in chest," was not a proper or adequate basis for a finding by the
jury that the accident was the sole cause of death where the question
stated some incidents of the accident in exaggerated terms not borne
out by the evidence and omitted mention of a coronary attack only
six months before the insured's death and the opinion was admittedly
based on a "gratuitous assumption of excitement and emotional
factors," not shown by any evidence, involved in the insured's going
to the hospital to take his wife home. [614]
Testimony by a wife about a nervous condition of her husband, who had
long suffered from hypertension and heart disease, between the time
of his discharge from a hospital following injuries sustained in an auto-
mobile accident and his death about a month later was not sufficient,
alone or in conjunction with testimony of a physician who agreed that
the husband's "disease of the heart actively coöperated with the
accident to cause" his death, to show, as required for recovery under
a double indemnity clause of a life insurance policy and an accident
insurance policy covering him, that his death resulted "independently"
of all other causes from bodily injury effected solely by accidental
means and not "directly or indirectly" from disease. [614–615]

[1] The companion case is by the same plaintiff against Metropolitan Life
Insurance Company.

TWO ACTIONS OF CONTRACT. Writs in the Superior Court dated March 12, 1953, and March 24, 1953, respectively.

The actions were tried before *O'Connell, J.*

*Louis Steinberg,* (*Everett A. Grant* with him,) for the plaintiff.

*John F. Finnerty,* for United States Fidelity and Guaranty Company.

*Eugene Lyne,* for Metropolitan Life Insurance Company.

CUTTER, J. These two cases were tried together. In each case, the defendant filed a motion for a directed verdict which was denied. There were verdicts for the plaintiff. The trial judge, under leave reserved, entered a verdict for each defendant.

The action against Metropolitan Life Insurance Company (hereinafter called Metropolitan) was to recover under the double indemnity feature of a life insurance policy covering the life of the plaintiff's husband (hereinafter called the insured). The action against United States Fidelity and Guaranty Company (hereinafter called Fidelity) was brought to recover under an accident policy taken out by the insured. The provisions, here relevant, of the two policies were closely similar in all substantial respects. The Metropolitan policy fairly raises the questions now presented for decision.[1] This policy provided for a special death benefit "upon receipt at the home office of the company . . . of due proof of the death of the insured as the result of bodily injury effected solely as described below." The provision thus referred to provided that the extra indemnity "shall be payable only if the death of the insured results as a consequence of bodily injury effected solely through external, violent, and accidental means within sixty days after such injury independently and exclusively of all other causes. This in-

---

[1] The Fidelity accident policy protected the insured "against loss, as herein defined, resulting directly and independently of all other causes, from bodily injuries effected during the term of this policy, solely through accidental means sustained while the insured is operating, . . . riding in . . . a private passenger automobile." This policy also provided "This insurance shall not cover . . . death . . . caused directly or indirectly, wholly or partly, by disease or infection, whether the disease or infection is the primary, proximate or a contributing cause of death."

demnity shall not be payable if the death of the insured results directly or indirectly from disease or from bodily or mental infirmity."

The jury, after considering a special question put to them by the trial judge, answered that the accident, mentioned below, was "the sole cause of death." The facts stated most favorably to the plaintiff are set out below.[1]

The insured was admitted to the Quincy City Hospital on April 8, 1952, following injuries suffered in an accident in which his automobile, after having been hit by another automobile, itself hit a tree. The insured "hit the steering wheel with a rather big impact." Upon the day of his admission to the hospital, he had a blood pressure as high as 226/152. The hospital record showed a history of "a coronary attack around Thanksgiving Day, for which he was admitted and . . . some angina pectoris a few years before that." The plaintiff was driving with her husband and was also admitted to the hospital as a result of the accident. The insured was discharged on April 16, 1952 (with a blood pressure of 185/120), to "rest at home."

On May 21, 1952, the insured was again admitted to the hospital "complaining of pain in chest" with a blood pressure of 180/108 and with a history of having "been a coronary case for a certain number of years" and "of hypertension and coronary insufficiency." He was on his way to the hospital to take his wife home, when he developed "chest pain and vomiting." He died suddenly late the next afternoon, May 22.

The plaintiff testified that the insured "prior to the accident . . . was generally very nervous" and became "extremely nervous . . . pitifully so" after the accident; that he "didn't look well enough to go home" on April 16, when he was discharged from the hospital; and that he remained in a highly nervous state between April 16 and May 21.

---

[1] Each defendant contends that the plaintiff did not present seasonably due proof that the insured's death was caused in a manner within the policy issued by that defendant. In the view that we take of the case there is no occasion to consider this issue or to state the facts with reference to the proofs filed.

During this period she saw him every day and found him worried over her health and the family finances. The insured, she said, had "worked constantly until the date of the accident, as far as she knew."

A qualified doctor, called by the plaintiff, in a long hypothetical question about the cause of the insured's death, was asked to assume that the insured was "a man fifty-eight years old who has for some time had a condition of heart hypertension, but is otherwise in reasonably good health" with a hospital record showing "coronary observation" and a "history of old coronary occlusion and angina" and a diagnosis including "hypertensive cardiovascular disease, coronary artery disease history." The witness was also asked to assume facts about the accident, in general as stated above, but with some incidents of the accident stated in exaggerated terms — not appearing otherwise in evidence (for example, that the insured was thrown against the "steering wheel which was broken" and that the "car was wrecked"). To this question the doctor answered that in his opinion "the automobile accident was directly the cause of" the insured's death. The doctor went on to say (a) that the injuries to the insured, who was "excitable and nervous," in effect "caused his blood pressure to rise higher than . . . under normal conditions" thus putting "an extra strain on his heart muscle, which caused some damage to that muscle," and (b) that, following his discharge from the hospital and stay at home, "the excitement of going to the hospital to pick his wife up . . . and of the emotional factors involved . . . again raised his blood pressure to a point where something happened within his heart muscle" so that he had to be treated for his cardiac condition and died.

The doctor conceded that the insured's blood pressure was lower when readmitted to the hospital in May than when discharged in April, and that he did not think that the excitement and emotional factors of going to pick up one's wife would produce a coronary attack in a healthy or normal heart. He further conceded that it happened in this case

"because of the hypertensive cardiovascular disease that was present" and also that "[h]ad he not had the heart disease, the chances are that nothing would have happened to him . . . that the disease of the heart actively coöperated with the accident to cause this death." The witness "would not have expected . . . [the insured] to die had he not been involved in the . . . accident." He pointed out that, although the improved blood pressure readings showed that the "nervousness quieted down," it had not "completely disappeared." The doctor conceded that his "purely gratuitous assumption of excitement and emotional factors" on the part of the insured on May 21 was not based on personal knowledge that the insured was excited, and that there was no "support for his assumption" in the hospital records. This assumption, he agreed, "was an essential part of the basis . . . of his answer to the hypothetical question."

The death certificate of the insured was introduced in evidence. It showed the cause of death to be "coronary artery disease" and made no reference to the automobile accident and injuries. An excerpt from the report of post mortem examination also showed the cause of death as "coronary artery sclerosis with recent infarction" and showed in various respects serious cardiac defects.

1. The hypothetical question, in view of the exaggerated assumptions already mentioned and its failure to mention specifically the Thanksgiving Day coronary attack (only six months prior to the insured's death), might well have been excluded on the defendants' objection, when originally asked, or struck from the record at the time of the defendants' later motion to that effect. See *Brownhill* v. *Kivlin,* 317 Mass. 168, 170; *Charron's Case,* 331 Mass. 519, 522–523; *Boston Safe Deposit & Trust Co.* v. *Blaisdell,* 333 Mass. 51, 57, and cases cited. See also Wigmore, Evidence (3d ed.) § 682. Compare *Commonwealth* v. *Moore,* 323 Mass. 70, 74–75; *Davis* v. *Seller,* 329 Mass. 385, 389. Also, the answer to the question was admittedly based on a "gratuitous assumption of excitement and emotional factors" not shown by any evidence. It is unnecessary, however, to decide whether the

trial judge erred (see *Taylor* v. *Creeley*, 257 Mass. 21, 26–27; *Davis* v. *Hotel Statler Co. Inc.* 327 Mass. 28, 31) in failing to strike the answer to the question. Because it was based upon at least this one important "gratuitous assumption" not supported in the record, the opinion of the doctor given in answer to the question "is revealed by the cross-examination to have been no real opinion at all" (see *Brownhill* v. *Kivlin*, 317 Mass. 168, 170; *Maniscalco* v. *Director of the Division of Employment Security*, 327 Mass. 211, 215–216; *Ralph's Case*, 331 Mass. 86, 89–90; see also *Nass* v. *Duxbury*, 327 Mass. 396, 401–402) and, therefore, not a proper or adequate basis for the jury's finding on the issue of cause of death. The omission of an apparently undisputed fact about the Thanksgiving Day coronary attack confirms the impropriety (see *Taylor* v. *Creeley*, 257 Mass. 21, 27) of permitting weight to be given to the answer.

2. Without the answer to the hypothetical question (and even taking it into account in view of its infirmities), there is no evidence adequate to warrant a finding for the plaintiff. The evidence of the plaintiff about the nervous condition of her husband between his discharge from the hospital in April and his death in May, although admissible as a matter of common observation by a lay person (see *Koch* v. *Lynch*, 247 Mass. 459, 463; *Vieira* v. *East Taunton Street Railway*, 320 Mass. 547, 550–551), was not sufficient, either alone or with any other evidence, to prove what the plaintiff must prove in order to recover, namely, that the insured's death (in the case of the Metropolitan policy) "results as a consequence of bodily injury" and not "directly or indirectly from disease or . . . bodily . . . infirmity," and (in the case of the Fidelity policy) arose "from bodily injuries effected . . . solely through accidental means" and "not . . . directly or indirectly, wholly or partly, by disease . . . whether the disease . . . is the . . . proximate or a contributing cause of death."

The plaintiff is not helped by the doctor's testimony in addition to his answer to the hypothetical question. The doctor agreed that "the disease of the heart actively co-

operated with the accident to cause this death," a statement which, if believed, showed that the heart disease was sufficiently a cause of the insured's death to make it a "contributing" cause, so that the injuries could not be the sole cause "independently of all other causes." Although the doctor stated that he would not have "expected . . . [the insured] to die had he not been involved in the automobile accident," none of the doctor's testimony, even taken alone and in unduly isolated fragments (compare *Woods* v. *DeMont*, 322 Mass. 233, 235, and cases cited in *Hannon* v. *Hayes-Bickford Lunch System, Inc.*, ante, 268, 270), goes to the extent of showing what the plaintiff was bound to show (see *Lubianez* v. *Metropolitan Life Ins. Co.* 323 Mass. 16, 18–19; *Krantz* v. *John Hancock Mutual Life Ins. Co.* 335 Mass. 703, 713), namely, that the insured's death was not within the class of cases excluded from each company's range of liability under its policy.

Each defendant is, of course, to be held only to the liability it assumed under its policy. See *Gorski* v. *New York Life Ins. Co.* 315 Mass. 17, 18–19. Here the plaintiff has failed to show that the insured's death came within the policies. The rule applicable to cases like the present one was stated in *Leland* v. *Order of United Commercial Travelers of America*, 233 Mass. 558.[1] The court, in that case, denied recovery because the deceased was suffering from disease "which actively co-operated . . . in causing death" and because the disease and the accident "were concurring, efficient and proximate causes in producing the death." The *Leland* case has been cited with apparent approval as recently as in *Howe* v. *National Life Ins. Co.* 321 Mass. 283, 287–288. The *Howe* case, and authorities therein cited,

---

[1] At pages 564–565, Rugg, C.J., said, "[I]f the insured was suffering from a disease, which was accelerated and aggravated by the accident so as to be a cause co-operating with it to produce the fatal end, then there can be no recovery. Manifestly recovery is not barred merely because the insured is suffering from disease. One upon a bed of illness may meet death by . . . accidental means. . . . If there is no active disease, but merely a frail general condition, so that powers of resistance are easily overcome, or merely a tendency to disease which is started up and made operative, whereby death results, then there may be recovery even though the accident would not have caused that effect upon a healthy person in a normal state."

show the clear line of distinction adopted by our decisions between (a) death caused by a disease induced by the injury, even if the insured had some "frailty or general weakness . . . [or] predisposition to a disease, or . . . a disease then . . . dormant" and (b) "the aggravation of an existing heart disease by an accident" so that death is "caused by the joint operation of a preëxisting disease," in which event the "accident is not within the scope of the policy" (at page 287). The plaintiff here has clearly failed to show that the insured's death was "due to an accident alone and independent of a concurring disease." She is barred by the doctrine that an "accident that is merely the contributing cause of death cannot be said to be the sole cause operating independently of all other causes" (at page 288). The following cases are distinguishable: *Kramer* v. *New York Life Ins. Co.* 293 Mass. 440, 442–445 (fall caused "germs present in the [insured's] body . . . to light up"); *Sheehan* v. *Aetna Life Ins. Co.* 296 Mass. 535, 537–538 (insured's heart condition on conflicting evidence found not to be a cause of death); *Barnett* v. *John Hancock Mutual Life Ins. Co.* 304 Mass. 564, 566–568 (subsequent disease occurring as result of accident); *Sargent* v. *Massachusetts Accident Co.* 307 Mass. 246, 250–251 (evidence held to show that it was more likely that death occurred as a result of injury within the policy than by other means).

3. It is not necessary to consider the defendant's exceptions and they are dismissed. The plaintiff's exceptions must be overruled.

*So ordered.*