ROBERT LEE EMANUEL, JR. v. COLONIAL LIFE AND ACCIDENT IN-
SURANCE COMPANY

No. 7716DC247

(Filed 7 March 1978)

Insurance § 60— accident insurance—exclusion for pre-existing disease—arterio-
sclerosis as disease—jury question

In an action by plaintiff to recover as beneficiary under an accident in-
surance policy which specifically excluded "any loss caused or contributed to
directly or indirectly by any pre-existing disease, infirmity . . .," a question of
fact as to whether the arteriosclerotic condition of the insured was so severe
that it constituted a disease or infirmity within the meaning of the policy was
raised and summary judgment was therefore improper where the evidence
tended to show that the insured was involved in a serious automobile accident
and sustained extensive injuries; insured was in good health before the acci-
dent; he developed a myocardial infarction only after the increased stress was
placed on his heart following the accident; and insured was suffering from
some degree of arteriosclerosis prior to the accident.

APPEAL by defendant from *Gardner, Judge.* Judgment
entered 20 January 1977 in District Court, ROBESON County.
Heard in the Court of Appeals 20 January 1978.

In this action plaintiff seeks to recover $7,500 as beneficiary
in an accident insurance policy issued by defendant on the life of
Robert Lee Emanuel (Mr. Emanuel). Plaintiff alleged in his com-
plaint that the policy was issued on 12 January 1954, that Mr.
Emanuel sustained multiple injuries in an automobile accident on
7 April 1975, that he died from the injuries on 22 May 1975, and
that the policy was in full force and effect on that date.

Defendant filed answer admitting the issuance of the policy,
that Mr. Emanuel sustained the injuries complained of, that he
died on 22 May 1975, and that the policy was in full force and ef-
fect. In further defenses defendant denied liability on the grounds
that the policy insured Mr. Emanuel "against Loss resulting
directly, independently and exclusively of all other causes from
bodily injuries effected solely through external, violent and ac-
cidental means . . ." and specifically excluded "(k) any loss caused
or contributed to directly or indirectly by any pre-existing
disease, infirmity, deformity or physical impairment or medical or
surgical treatment therefor".

On 16 June 1976 defendant filed a motion for summary judgment on the grounds that there is no genuine dispute as to any material fact and submitted in support of the motion affidavits by Dr. B. B. Andrews and Dr. Jack E. Dunlap, the autopsy report and a deposition of Dr. Andrews. The affidavits and the autopsy report state that death was caused by a myocardial infarction which occurred several days to two or three weeks prior to death and a coronary artery occlusion; and that the bodily injuries sustained in the accident were contributing factors, but not the exclusive cause of death.

In his deposition, Dr. Andrews stated that his autopsy of the deceased revealed evidence of fractures of the legs, arteriosclerosis or thickening of the arteries of the heart five or six times their normal thickness, an occlusion of the right coronary artery and a myocardial infarction; that in his opinion, death occurred by the myocardial infarction as a result of the coronary artery occlusion; that the arteriosclerosis contributed to the insured's death; that arteriosclerosis generally occurs in everyone as they age, usually beginning in the late teens or early twenties; that the injuries sustained in the accident and corrective surgical procedures required could have resulted in sufficient stress to initiate the occlusion of the coronary artery because the heart was forced to increase circulation; that the increased circulation resulted in stress on the lining of the blood vessel which combined with the arteriosclerotic condition and could cause the thrombus or blood clot to form; and that the physical condition and general appearance of the deceased revealed a man of approximately sixty-three years of age who was in generally good condition except for the injuries and surgical wounds incurred as a result of the accident.

On 13 January 1977 plaintiff moved for summary judgment, relying on an affidavit of Dr. Andrews given on 24 August 1976, an affidavit of Dr. Dunlap given on 10 January 1977, and an affidavit of plaintiff given on 13 January 1977.

The affidavits of the two doctors, taken to enlarge and clarify their previous affidavits, describe the circumstances surrounding insured's death and the cause of death as follows:

It is my opinion . . . that the death of Robert Lee Emanuel, Sr. was due to myocardial infarction as the result

of the occlusion of the right coronary artery and that the bodily injuries he received as a result of the automobile accident were contributory factors to the coronary artery occlusion and resulting myocardial infarction.

It is further my opinion that the myocardial infarction did not exist at the time of the automobile accident and that the injuries received in this automobile accident were of such degree and the stress of his surgery, and the process of reacting to and recovering from these injuries in a man of 63 years were sufficiently severe that the injuries received in this automobile accident could or might have initiated the occlusion of the coronary artery and resulted in myocardial infarction.

On 20 January 1977 the court denied defendant's motion and granted plaintiff's motion for summary judgment. Defendant appealed.

*Womble, Carlyle, Sandridge and Rice, by Alan R. Gitter and William C. Raper, for defendant appellant.*

*I. Murchison Biggs, by I. Murchison Biggs and Adelaide G. Behan, for plaintiff appellees.*

BRITT, Judge.

Defendant contends first that the trial court erred in granting summary judgment for plaintiff. We agree with this contention and in view of the discussion to follow on defendant's other contention, no discussion on the first contention is necessary.

Defendant contends next that the trial court erred in denying its motion for summary judgment, arguing that the materials submitted to the court showed conclusively that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. We disagree with this contention and hold that the materials presented to the court do show a genuine issue of material fact.

Since the enactment of our statute on summary judgment, G.S. 1A-1, Rule 56, our courts have stated many times that summary judgment is an extreme remedy and is appropriate only where no genuine issue of material fact is presented. *Haddock v.*

*Smithson,* 30 N.C. App. 228, 226 S.E. 2d 411, *cert. denied* 290 N.C. 776, 229 S.E. 2d 32 (1976).

In ruling on a motion for summary judgment, the court does not resolve issues of fact and must deny the motion if there is any genuine issue of a material fact. *Singleton v. Stewart,* 280 N.C. 460, 186 S.E. 2d 400 (1972). The party moving for summary judgment has the burden of establishing the lack of a genuine issue of material fact and in that regard the papers of the opposing party are indulgently regarded. *Van Poole v. Messer,* 19 N.C. App. 70, 198 S.E. 2d 106 (1973).

After a careful review of applicable North Carolina case law and statements of law from other jurisdictions, we conclude that upon the facts as presented in this case in the form of affidavits, depositions and autopsy records, a genuine issue of fact exists as to whether the insured was suffering from a preexisting disease which combined with the injuries sustained in the automobile accident to cause his death.

Two basic rules have developed in the United States with respect to the recovery under an accident policy which contains clauses which allow recovery only if death occurs independently and solely as a result of an accident and exclusive of any preexisting disease or infirmity. In some jurisdictions recovery will be allowed under an accident policy if there is existing disease and injuries sustained in an accident accelerate the effect of the disease and cause an earlier death. Other jurisdictions deny recovery if there is a preexisting disease which combines with the injuries sustained in the accident and causes an earlier death. Annot. 84 A.L.R. 2d 176 (1962); Annot. 82 A.L.R. 2d 611 (1962). North Carolina courts appear to have adopted a version of the latter philosophy which was concisely stated in *Penn v. Insurance Co.,* 160 N.C. 399, 404, 76 S.E. 262, 263 (1912):

1. When an accident caused a diseased condition, which together with the accident resulted in the injury or death complained of, the accident alone is to be considered the cause of the injury or death.

2. When at the time of the accident the insured was suffering from some disease, but the disease had no causal con-

nection with the injury or death resulting from the accident, the accident is to be considered as the sole cause.

3. When at the time of the accident there was an existing disease, which, cooperating with the accident, resulted in the injury or death, the accident cannot be considered as the sole cause or as the cause independent of all other causes.

Defendant argues that the materials presented at the summary judgment hearing establish conclusively that Mr. Emanuel had an  existing *disease* at the time of his automobile accident, and that the disease, cooperating with the accident, caused his death thereby bringing the case under Rule 3 of *Penn.* Plaintiff argues that arteriosclerosis is not a *disease* within the meaning of the policy provisions in question and the rules set forth in *Penn,* therefore, the case comes under Rule 1 in *Penn.*

Research reveals that three basic views have been taken by courts as to whether arteriosclerosis is viewed as a disease or a normal condition of aging when recovery is sought under an accident insurance policy with provisions similar to those in the case at hand. The decisions, which appear to have been decided on a case by case basis, have held: (1) that arteriosclerosis is a disease as a matter of law; (2) that arteriosclerosis is a normal process of aging as a matter of law; and (3) that whether arteriosclerosis is a disease or a normal aging process is a question of fact for the jury. Annot. 61 A.L.R. 3d 822 (1975). This varied approach on the issue is also discussed in Couch on Insurance 2d, § 41-406, pp. 366-67. In order to determine whether the evidence in the present case establishes arteriosclerosis as a disease or a normal condition as a matter of law or whether it raises a question of fact for the jury, decisions involving similar factual situations from North Carolina and other jurisdictions must be examined.

North Carolina does not have a definitive decision on whether arteriosclerosis is classified as a disease or a normal aging process as a matter of law or whether the classification of arteriosclerosis is a question of fact for the jury. The facts, language and holdings in *Hicks v. Insurance Co.,* 29 N.C. App. 561, 225 S.E. 2d 164 (1976); *Horn v. Insurance Co.,* 265 N.C. 157, 143 S.E. 2d 70 (1965); and *Skillman v. Insurance Co.,* 258 N.C. 1, 127 S.E. 2d 789 (1962), provide guidance, but no definitive ruling on the issue.

In *Hicks* the deceased was covered by an insurance policy with accidental death benefits similar to those in the present case. The insured was a construction worker who fell from a ten-foot scaffold, sustained minor injuries, and died a short time later. The record in the case contained an autopsy report which stated "that the insured . . . expired from cardial complications of longstanding coronary artery disease with an old myocardial infarction." Testimony in the record also indicated that the insured suffered from "severe coronary artery disease"; that there was "no fresh thrombus in any of the arteries and no fresh infarction"; that the condition of the coronary artery and the infarction had existed in deceased for a number of months prior to the fall; and that the medical examiner had revised his original report on the cause of death from "traumatic injuries as a result of the fall from scaffold" to "myocardial infarction." Based on the evidence presented by affidavits, interrogatories and depositions, defendant's motion for summary judgment was granted. The Court of Appeals affirmed the lower court ruling with the following language:

> . . . Through its evidentiary material defendant established by expert medical opinion that Roy Hicks died as a result of a myocardial infarction which was due to coronary arteriosclerosis. Death of the insured from myocardial infarction would prohibit the beneficiary from recovery under the accidential insurance policy coverage and entitle defendant to judgment as a matter of law. 29 N.C. App. at 564, 225 S.E. 2d at 166.

The court stated further that the plaintiff had not fulfilled its burden to respond by affidavit to establish that there was a genuine issue for trial with respect to the cause of death by showing that death was due to accidental injury rather than heart failure. Finally the court concluded with the following dictum statement:

> Assuming arguendo that plaintiff's evidence in opposition to the motion for summary judgment raises an inference that the accidental fall contributed to the cause of death there is still no genuine issue for trial. Where death is caused by a preexisting diseased condition in cooperation with an accident it is not an accidental bodily injury independent of all

other causes. *Horn v. Insurance Co.*, 265 N.C. 157, 143 S.E. 2d 70 (1965). 29 N.C. App. at 564, 225 S.E. 2d at 166.

Based on the facts presented in the record and the opinion of the *Hicks* case, the preexisting disease which prevented recovery under the insurance policy was the "old myocardial infarction" and the longstanding severe coronary artery disease. There was no evidence presented in *Hicks* which even raised an inference that the insured's arteries were sclerosed only to the extent that was normal for a man in the insured's age bracket. We do not think *Hicks* supports defendant's argument that any degree of arteriosclerosis is a disease as a matter of law in North Carolina. At best *Hicks* indicates by dictum that before a summary judgment will be allowed for the insurer, the evidence must show that the arteriosclerosis was so severe that it had developed into a longstanding coronary artery disease and that the myocardial infarction occurred prior to the accident.

The *Horn* and *Skillman* cases also support the view that a question of fact was raised for the jury in the present case. In *Horn* the insured was a seventy-two-year-old man with a history of heart attacks and old hospital records indicated that he had been suffering from "arteriosclerotic cardiovascular disease" for the last ten years. Insured died within an hour after a minor automobile accident in which he sustained only superficial lacerations. The medical examiner stated that death resulted from severe heart disease and that the accident precipitated the heart attack. The Supreme Court reversed the trial court ruling allowing recovery on the insurance policy on the grounds that a nonsuit should have been granted since the insured was suffering from a preexisting disease and the mental shock of the accident alone could not be a sufficient injury to cause death.

In *Skillman*, the insured drove his car off the side of a road and into a river. An eyewitness, who was on a fishing boat at the time of the accident, testified that he went up to the side of the sinking car and offered to help the insured, but the insured smiled, moved to the center of the car seat, and went down with the car. When the insured's body was recovered, an autopsy revealed that death was the result of coronary occlusion; that the deceased's arteries were "pin point size"; and that there was nothing to show that death came from drowning or traumatic in-

juries. The uncontroverted evidence indicated that the insured had been suffering from arteriosclerosis and hypertension for about three years prior to his death; that he had been treated by numerous physicians with special diets and medication; that he had been involved in an automobile accident in April of 1956 of which he had no recollection; and that as a result of that accident he developed a temporary paralysis of one leg and a coma which the doctors found was a result of a cerebral occlusion. The case was submitted to the jury which held for the insurer on the grounds that the insured did not die exclusively by accidental means. Plaintiff appealed and the Supreme Court affirmed the trial court, holding that the insured could not recover because he fell under the third *Penn* rule since death was the result of a preexisting disease in cooperation with the accident.

The facts in both the *Horn* and *Skillman* cases are clearly distinguishable from these in the present case. In *Horn* and *Skillman*, the evidence was uncontradicted that the insureds were suffering from and had been treated for longstanding preexisting diseases which had been contributing factors, if not the sole causes of death. In both cases, death occurred a short time after a minor accident in which only superficial injuries were sustained.

In the present case, the evidence indicates that Mr. Emanuel had some degree of arteriosclerosis, but is unclear whether the sclerotic condition was normal for a sixty-three-year-old man; that he was in good physical condition prior to the accident and had no previous history of heart disease; and that the myocardial infarction developed *after* he was severely injured in the automobile accident, and probably resulted from the increased stress that was placed on his heart because of the injuries and the extensive surgery that was required. We think a question of fact exists as to whether the insured's arteriosclerotic condition was so severe that it could be classified as a "disease" within the meaning of the policy. *See generally Williams v. Insurance Co.,* 288 N.C. 338, 218 S.E. 2d 368 (1975); *Bentley v. Insurance Co.,* 268 N.C. 155, 150 S.E. 2d 45 (1966). To hold otherwise would allow insurance companies to escape liability under an accident policy any time an insured dies as a result of injuries received in an accident, but is also suffering from even a normal degree of arteriosclerosis which may contribute to the accidental death.

Cases from other jurisdictions which are factually similar to the present situation also support the view that the evidence

presented raises a question of fact as to whether the arteriosclerotic condition of the insured could be classified as a preexisting disease or infirmity which contributed to his death. Although numerous cases can be found in which the courts have submitted this issue to the jury, the following discussion will only include several representative cases to illustrate the typical factual situations in which this issue becomes operative.

In *Preferred Accident Insurance Company of New York v. Combs*, 76 F. 2d 775 (8th Cir. 1935), a policy was issued to the insured which contained provisions similar to these in question here. Evidence showed that the insured fell and hit his head, that a brain hemorrhage resulted because the insured had arteriosclerosis or friable arteries which were a principal factor in producing the hemorrhage, and that prior to the accident the insured was in good health even though he had been successfully treated for high blood pressure approximately a year before. The lower court submitted the case to the jury on two issues: (1) whether the arteriosclerotic condition of the deceased constituted a disease within the meaning of the policy, and (2) whether the arteriosclerotic condition contributed to the death of the insured. The jury found for the beneficiary under the policy, but on appeal the case was reversed and remanded on the grounds that the second issue should not have been presented to the jury since it was beyond question under the evidence that the arteriosclerosis contributed to the insured's death and the only question was whether the arteriosclerosis constituted a disease within the meaning of the policy.

In holding that the question of whether the arteriosclerosis constituted a disease within the meaning of the policy was correctly submitted to the jury, the court first cited the general rules of law in the 8th Circuit governing this type of situation:

> . . . [I]f the insured was afflicted with a disease or bodily infirmity which caused the death, the insurance company was not liable; that if, at the time of the accident, the insured was "suffering from a pre-existing disease or bodily infirmity, and if the accident would not have caused his death if he had not been affected with the disease or infirmity, but he died because the accident aggravated the effects of the disease, or the disease aggravated the effects of the accident, the ex-

press contract was that the association should not be liable for the amount of this insurance. The death in such a case would not be the result of the accident alone, but it would be caused partly by the disease and partly by the accident. * * *" 76 F. 2d at 779-80.

This rule is very similar to the North Carolina rule enunciated in *Penn*. Applying this rule to the condition of arteriosclerosis, the court stated:

All men do not possess like physical strength, immunity to disease, and resistance to senile degeneration. Some are "inherently" strong, others achieve strength only through a vigorous, patient, and systematically prescribed course of development. Although aware of great discrepancies in physical vigor between individuals, insurance companies issue accident policies to the weak as well as to the strong; to the old as well as to the young. And to these contracts the companies are held. That an insured is frail or is in a generally weakened condition does not relieve the company from its obligations under the policy. (Citations omitted.) . . . .

Just as differences between individuals constitute no ground for an insurance company's denying its responsibility under an accident policy, neither do the normal physical changes that inevitably accompany one's own advance in years afford relief to the insurer. Although the "processes of life and of death are still, in their essential nature, unfathomed mysteries," *Aetna Life Ins. Co. v. Allen* (C. C. A. 1) 32 F. (2d) 490, 493, we do know that because man lives, he must grow old. His hair greys; lines in his face appear; his senses become less acute; his ability to endure and to achieve decreases. But because one cannot participate in sport with the vigor of two decades earlier, because he cannot ascend and descend stairs with the energy of former days, because he is more susceptible to winter ills and less resistant to the ailments of the body, does not mean that one is "diseased" within the meaning of an accident policy. . . .

What has just been said generally with respect to physical degeneration that accompanies advancing age applies specifically to that condition called arteriosclerosis. It is a fact of general knowledge — and there is evidence in the in-

stant case—that, as one grows older, his arteries harden and become brittle, calcium deposits are laid therein, and he is considered "sclerotic." It is a physical characteristic of years and belongs in the category of greying hair, stiffening joints, and wrinkling skin. So long as it is "normal," so long as it advances to no greater degree than is customarily found in persons of the same age, this sclerosis cannot be termed a disease in the sense that defeats recovery. While arteriosclerosis has often been termed a disease and is at times rightly considered such, it must in the specific individual be more than is normal to render it a disease within the meaning of an accident policy. Any other interpretation would largely nullify contracts of the character here involved, for almost every individual out of his forties would then be "diseased" and, in most cases, therefore, unable to be eligible for the enjoyment of the benefits of the policy. The insurance company assumes the risks of normal physical degeneration, as distinguished from "disease." Such clearly was the intention of the parties when the contract was entered into. "A policy of insurance is not accepted with the thought that its coverage is to be restricted to an Apollo or a Hercules," said Mr. Justice Cardozo when he was Chief Judge of the New York Court of Appeals. *Silverstein v. Met. Life Ins. Co.*, 254 N.Y. 81, 171 N.E. 914, 915. Nor is it accepted with the thought that the mere weakenings of age will render its benefits incapable of enjoyment. 76 F. 2d at 781.

Following this analysis the court specifically held:

While the burden of proof is of course on the plaintiff to bring herself within the provisions of the policy, (citations), and to show that an accident caused the injury, the question whether plaintiff has sustained that burden and by a preponderance of the evidence has shown that [the insured's] sclerotic condition was only that normal to persons of his age and not of the state where it constituted a disease, is, under this conflicting medical testimony, a question for the jury. 76 F. 2d at 784.

By comparing the factual similarities between the *Combs* case and the present case, and the similarity in the governing principles of the two jurisdictions, it can be seen that the *Combs* case

supports the view that a question of fact as to what constituted a disease within the meaning of the accident policy issued to Mr. Emanuel was created by the conflicting evidence concerning the extent of his sclerotic condition.

In *Novick v. Commercial Travelers Mutual Acc. Ass'n*, 203 Misc. 830, 118 N.Y.S. 2d 533 (1953), the insured was involved in an automobile accident and sustained certain injuries. Under an accident policy containing provisions similar to those in question here insured attempted to recover for disability which he claims developed as a result of the accident. The defendant insurer moved for summary judgment on three grounds, one of which was that the claimed disability was caused by disease, and not solely and exclusively by accidental means. The court reviewed the defendant's proof of an existing disease which indicated that the insured had been treated for coronary artery insufficiency, but had normal electrocardiogram following treatment and no marked changes due to coronary artery insufficiency appeared in his electrocardiogram until after the accident. The court denied the motion for summary judgment and stated that "[i]n this state of proof, there is a triable issue as to whether plaintiff was at the time of the accident suffering from a 'disease', as defined in the foregoing cases, and as to whether such disease was a concurring cause of disability." 118 N.Y.S. 2d at 538.

In *Police and Firemen's Insurance Association v. Blunk*, 107 Ind. App. 279, 20 N.E. 2d 660 (1939), the question of whether arteriosclerosis was so severe in an individual that it constituted a preexisting disease so as to prevent recovery under an accident policy was raised. The policy contained clauses similar to those in question here. The insured had been employed as a fireman for twenty-five years and his general health was good immediately prior to his death. Insured and other firemen had entered a burning building and encountered a fire caused by an explosion of a coal oil stove. The smoke was black, heavy and hot; and shortly after the insured entered the house, he emerged holding his throat and staggering. He was taken to the hospital where he died a short time later of a coronary occlusion which had been set off by the hot, dense coal oil smoke. The jury held for the beneficiary under the policy and the insurer appealed on the ground that death was contributed to by a preexisting heart disease. The appeals court affirmed the jury verdict of the lower

court and held that there was no error in refusing to direct a verdict for the insurer.

A similar situation occurred in the case of *Reed v. United States Fidelity and Guaranty Co.*, 176 Colo. 568, 491 P. 2d 1377 (1971). In that case, the policy contained clauses similar to those involved here. The insured was a volunteer fireman who became ill while fighting a fire and died on his way to the hospital. The autopsy disclosed "(1) '[c]oronary arteriosclerosis of prominent degree with evidence of very recent thrombotic occlusion of anterior descending branch of left coronary artery' and (2) '[e]vidence of effects of smoke inhalation in the tracheobronchial tree.' " Cause of death was listed as " 'thrombosis, anterior branch of left coronary artery due to coronary arteriosclerosis of several years' and 'smoke asphyxiation during fire fighting' as one of 'other significant conditions contributing to death but not related to the terminal disease condition.' " 491 P. 2d at 1379.

Two medical experts testified for the plaintiff that the decedent was a 56-year-old man in good health and that examinations over a course of years had given no indication of arteriosclerosis or heart disease. "Both medical experts agreed (1) that the examinations and the autopsy showed a heart and circulatory function which was well within normal limits for a 56-year-old man, (2) that arteriosclerosis is a part of the normal aging process and that any normal 56-year-old man would have shown the same or a greater degree of arteriosclerosis that the deceased had shown, (3) that 'but for' smoke inhalation, deceased would probably not have suffered a thrombosis, and (4) that 'but for' arteriosclerosis, the deceased would probably not have suffered a thrombosis." 491 P. 2d 1379. The experts also testified that the smoke inhalation would have put a strain on the decedent's heart which could cause a coronary heart attack. At the close of plaintiff's evidence defendant moved to dismiss on grounds that there was no accidental death and death was contributed to by a bodily infirmity or a disease. Trial court granted the motion, apparently holding that although arteriosclerosis is a condition of the aging process, it was a cause contributing to the insured's death and brought the loss within the exclusion of the insuring clause.

The Colorado Supreme Court noted that this was a case of first impression in their jurisdiction and reversed the trial court's

ruling on the grounds that the plaintiff's evidence had raised a question of fact for the jury as to whether the insured was suffering from a preexisting disease or infirmity because of his arteriosclerotic condition.

By comparing the factual situations presented in the four illustrative cases discussed to the instant case, it appears that the same rules should apply and that the conflicting evidence has raised a question for the trier of fact as to whether Mr. Emanuel's sclerotic condition was so severe that it could be classified as a preexisting disease or infirmity which would prevent recovery under the policy. While Dr. Andrews indicated that Mr. Emanuel's arteries in places were five or six times their "normal" thickness, he did not make it clear whether "normal" referred to a 20-year-old or a 63-year-old.

Although it is true that some cases have held that arteriosclerosis will preclude recovery under an accident policy similar to the one in question these cases can be easily distinguished because the arteriosclerosis or diseased condition was well-established and long-standing, and the accident usually minor. *See Order of the United Commercial Travelers v. Nicholson*, 9 F. 2d 7 (2nd Cir. 1925) (Insured was suffering from an advanced stage of arteriosclerosis and died of pneumonia after a minor fall.); *Horn v. Insurance Co., supra; Skillman v. Insurance Co., supra; Tomaiuoli v. U.S. Fidelity & Guaranty Co.*, 75 N.J. Super. 192, 182 A. 2d 582 (1962) (Insured, who was 72 years old and had been suffering for many years from arteriosclerotic heart disease, died as a result of a heart attack which he sustained following the excitement of a minor automobile accident in which he was not physically injured.); *Brown v. U.S. Fidelity & Guaranty Co.*, 336 Mass. 609, 147 N.E. 2d 160 (1958) (Insured, who died following a minor automobile accident in which he was not injured, had a history of coronary insufficiency for a number of years prior to the accident.); *Howe v. National Life Insurance Co.*, 321 Mass. 283, 72 N.E. 2d 425, 170 A.L.R. 1254 (1947) (Insured was involved in a minor automobile accident, but was not seriously injured. He died approximately two months later as a result of coronary thrombosis which was a result of a serious heart disease that had almost produced a fatal attack two weeks before he was involved in the accident under which coverage was claimed.); *Penn v. Insurance Company, supra. See also* Annot. 61 A.L.R. 3d

822 (1975); Annot. 84 A.L.R. 2d 176 (1962); Annot. 82 A.L.R. 2d 611 (1962).

The North Carolina cases dealing with similar situations have never made a definitive ruling on whether arteriosclerosis is to be treated as a disease or a normal condition of aging. Since the evidence in the present case indicates that the insured was involved in a serious automobile accident and sustained extensive injuries; that he was in good health prior to the accident; that he developed the myocardial infarction only after the increased stress was placed on his heart following the accident; and that he was suffering from some degree of arteriosclerosis prior to the accident, a question of fact as to whether the arteriosclerotic condition was so severe that it constituted a disease or infirmity within the meaning of the policy was raised, and a summary judgment for either party could not be properly granted.

For the reasons stated, that part of the order appealed from denying defendant's motion for summary judgment is affirmed; that part of the judgment allowing plaintiff's motion for summary judgment and awarding recovery in his favor is reversed; and this cause is remanded for further proceedings consistent with this opinion.

Affirmed in part, reversed in part and cause remanded.

Judges VAUGHN and ERWIN concur.