JAMES G. HOOKS v. COLONIAL LIFE & ACCIDENT INSURANCE COMPANY

No. 7817SC1159

(Filed 6 November 1979)

**Insurance § 21— disability insurance —incontestability clause**

In an action to recover under a policy of disability insurance where defendant claimed that whatever disability plaintiff had was not caused solely by an automobile accident but was caused in part by a lumbar laminectomy performed on plaintiff several years earlier, there was no merit to plaintiff's contention that the incontestable provision of the insurance contract prevented defendant from raising the defense that plaintiff's prior physical condition contributed to his disability, since the provision in question made claims for disability as defined in the policy incontestable; the policy covered disabilities "resulting directly, independently and exclusively of all other causes from bodily injuries effected solely by accident . . ."; and the incontestable clause dealt only with validity of the contract, not construction, and defendant was therefore not barred from raising the issue of whether plaintiff's disability was caused solely by accident as set forth in the policy.

APPEAL by plaintiff from *Kivett, Judge.* Judgment entered 30 June 1978 in Superior Court, CASWELL County. Heard in the Court of Appeals 18 September 1979.

This is an action upon a policy of disability insurance issued by defendant. Plaintiff alleges he is totally disabled because of an automobile accident on 15 September 1973 and thus entitled to payments under the policy, which defendant refuses to make. Plaintiff, by way of amendment, also alleges the actions of defendant constitute violations of Chapter 75 of the General Statutes of North Carolina, the consumer protection law, and that he is entitled to relief under that statute. Defendant denies it is obligated to make any payments to plaintiff under the insurance policy. The insurance company alleges that whatever disability plaintiff has was not caused solely by the automobile accident of September 1973, but was caused, at least in part, by a lumbar laminectomy performed on plaintiff in 1970. Defendant also denies any violations of Chapter 75.

Upon completion of discovery proceedings, defendant moved for summary judgment, which was allowed 30 June 1978. Plaintiff appeals.

*Ramsey, Hubbard & Galloway, by Joel H. Brewer, for plaintiff appellant.*

*Womble, Carlyle, Sandridge & Rice, by Allan R. Gitter, for defendant appellee.*

MARTIN (Harry C.), Judge.

The now familiar rules applicable to summary judgment are stated by Justice Huskins for the Supreme Court in *Moore v. Fieldcrest Mills, Inc.,* 296 N.C. 467, 469-70, 251 S.E. 2d 419, 421-22 (1979):

> Authoritative decisions, both state and federal, interpreting and applying Rule 56 hold that the party moving for summary judgment has the burden of "clearly establishing the lack of any triable issue of fact by the record properly before the court. His papers are carefully scrutinized; and those of the opposing party are on the whole indulgently regarded." 6 Pt. 2 Moore's Federal Practice, § 56.15[8], at 642 (2d ed. 1976); *Singleton v. Stewart,* 280 N.C. 460, 186 S.E. 2d 400 (1972). "This burden may be carried by movant by proving that an essential element of the opposing party's claim is nonexistent or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim. If the moving party meets this burden, the party who opposes the motion for summary judgment must either assume the burden of showing that a genuine issue of material fact for trial does exist or provide an excuse for not so doing." *Zimmerman v. Hogg & Allen,* 286 N.C. 24, 209 S.E. 2d 795 (1974).
>
> The language of the rule itself conditions the rendition of summary judgment upon a showing by the movant that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The court is not authorized by Rule 56 to decide an issue of fact. It is authorized to determine whether a genuine issue of fact exists. The purpose of summary judgment is to eliminate formal trials where only questions of law are involved by permitting penetration of an unfounded claim or defense in advance of trial and allowing summary disposition for either party when a fatal weakness in the claim or defense is ex-

posed. *Caldwell v. Deese*, 288 N.C. 375, 218 S.E. 2d 379 (1975). "The device used is one whereby a party may in effect force his opponent to produce a forecast of evidence which he has available for presentation at trial to support his claim or defense. A party forces his opponent to give this forecast by moving for summary judgment. Moving involves giving a forecast of his own which is sufficient, if considered alone, to compel a verdict or finding in his favor on the claim or defense. In order to compel the opponent's forecast, the movant's forecast, considered alone, must be such as to establish his right to judgment as a matter of law." 2 McIntosh, N.C. Practice and Procedure, § 1660.5 (2d ed. Phillips Supp. 1970). "If there is any question as to the credibility of witnesses or the weight of evidence, a summary judgment should be denied. . . ." 3 Barron and Holtzoff, Federal Practice and Procedure, § 1234 (Wright ed. 1958).

We now apply these principles to the record before us to determine the propriety of the summary judgment for the defendant.

The one basic fact issue that plaintiff must prove at trial is that the 15 September 1973 automobile accident was the direct, independent and exclusive cause of his disability. The evidence before the court at the hearing showed that the prior physical condition of plaintiff at least contributed to plaintiff's alleged disability. There was no evidence that plaintiff's condition is solely the result of the 15 September 1973 accident. Plaintiff does not argue to the contrary in his brief; nevertheless, plaintiff contends the entry of summary judgment was error because of the incontestability clause in the policy.

The policy contains the following provision:

TIME LIMIT ON CERTAIN DEFENSES: After two years from the effective date of this Policy no misstatements, except fraudulent misstatements, made by the applicant in the application for such Policy shall be used to void the Policy or to deny a claim for loss incurred or disability (as defined in the Policy) commencing after the expiration of such two-year period.

> No claim for loss incurred or disability (as defined in the
> Policy) commencing after two years from the effective date of
> this Policy shall be reduced or denied on the ground that a
> disease or physical condition not excluded from coverage by
> name or specific description effective on the date of loss had
> existed prior to the effective date of coverage of this Policy.

This provision is required by N.C.G.S. 58-251.1(2)a, b.

Plaintiff contends that the incontestable provision of the con-
tract prevents defendant from raising the defense that plaintiff's
prior physical condition contributed to his present disability. We
do not agree. Plaintiff urges us to adopt the rule announced by
the Indiana Court of Appeals for the Second District in *Colonial
Life v. Newman,* 152 Ind. App. 554, 284 N.E. 2d 137, *rehearing
denied,* 288 N.E. 2d 195 (1972). In *Colonial,* plaintiff Newman
brought suit on an accident disability policy. The evidence in-
dicated he had a preexisting arthritic condition that was ag-
gravated and activated by the accident, resulting in his disability.
The insurer argued that "the insured's pre-existing arthritis
caused him to become symptomatic which excluded the *insured*
from coverage, *i.e.,* the injury to the insured was not 'directly, in-
dependently, and exclusively' caused by the accident in question."
*Id.* at 558, 284 N.E. 2d at 140 (emphasis added). Plaintiff contend-
ed the incontestability clause prevented Colonial from raising this
defense. In reply to this argument, Colonial took the untenable
position that since this provision was required by statute, it did
not apply to the issue of liability. The Indiana Court dismissed
this argument of Colonial and allowed plaintiff to recover, without
addressing the issue of whether plaintiff's disability was solely
caused by the accident.

Our research does not disclose any citations in which the In-
diana courts, or the courts of any other state, have relied upon
this holding in *Colonial.* We find the better reasoned opinion of
the meaning of the incontestable clause to be that of then Chief
Judge Cardozo:

> The provision that a policy shall be incontestable after it has
> been in force during the lifetime of the insured for a period
> of two years is not a mandate as to coverage, a definition of
> the hazards to be borne by the insurer. It means only this,
> that within the limits of the coverage, the policy shall stand,

unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken.

Matter of *Met. Life Ins. Co. v. Conway,* 252 N.Y. 449, 452, 169 N.E. 642, 642 (1930).

In Couch on Insurance 2d, we find:

> The purpose of an incontestable clause is to annul all warranties and conditions that might defeat the right of the insured after the lapse of the stipulated time. But an incontestable clause relates to the validity of the contract and it does not affect the construction of the terms of the contract.
>
> . . . .
>
> An incontestable clause does not bar the insurer from proving that the loss was not covered by the terms of the policy.
>
> Expiration of the period of incontestability does not close the door to the defense that the contingency upon which liability depends has not occurred.
>
> An incontestable clause does not preclude the insurer from asserting that the cause of death was not within the coverage of the policy.

18 Couch on Insurance 2d §§ 72:2, :61 (1968).

In *Mills v. Insurance Co.,* 210 N.C. 439, 187 S.E. 581 (1936), Chief Justice Stacy states the rule in North Carolina concerning incontestable provisions:

> [T]here are numerous decisions to the effect that an incontestable clause cuts off all defenses except those allowed *eo nomine* in the clause itself . . . .
>
> . . . .
>
> . . . incontestable clauses . . . do not preclude the defendant from requiring, as a condition to recovery thereunder, "due proof of such total and permanent disability as entitles him (plaintiff) to the benefits hereof." *Carter v. Ins. Co.,* 208 N.C., 665, 182 S.E., 106.

We are aware of no decision which would deny to a defendant the right to dispute the genuineness of plaintiff's claim, or to controvert the question of liability under its contracts. *McCabe v. Casualty Co.*, 209 N.C., 577, 183 S.E., 743; *Jolley v. Ins. Co.*, 199 N.C., 269, 154 S.E., 400; *Scarborough v. Ins. Co.*, 171 N.C., 353, 88 S.E., 482. To contend for a limitation of the coverage clause in a policy of insurance is not to contest its validity. . . . Denial of coverage ought not to be confused with the defense of invalidity. *Ins. Co. v. Conway*, 252 N.Y., 447.

*Id.* at 441-42, 187 S.E. at 582-83.

The clause in the policy under consideration makes claims for disability *as defined in the policy* incontestable. (Emphasis ours.) The policy covers disabilities "resulting directly, independently and exclusively of all other causes from bodily injuries effected solely by accident . . . ." The incontestable clause does not bar defendant from raising the issue of whether plaintiff's disability was caused solely by accident as set forth in the policy. Upon consideration of that issue, all the evidence is to the effect that the automobile accident was not the sole cause of plaintiff's disability. The trial court properly granted defendant's motion for summary judgment.

Affirmed.

Judges HEDRICK and CLARK concur.