CHARLES T. McGEE v. COLONIAL LIFE & ACCIDENT INSURANCE
COMPANY

No. 8028DC716

(Filed 3 March 1981)

**Insurance § 67.2– accident insurance – cause of injury – sufficiency of lay testimony**

> In an action to recover on a group accident insurance policy issued by
> defendant where plaintiff, a 53 year old meatcutter, alleged that he slipped
> on a wet floor at work, fell on his back, and as a result of the accidental injury
> became totally disabled, but where defendant alleged that plaintiff's disabil-
> ity, if any, was caused either directly or indirectly by long-standing infirmi-
> ties of plaintiff's back, which infirmities were merely aggravated by plain-
> tiff's fall, the trial court erred in entering summary judgment for defendant,
> since the medical evidence forecast by defendant in the affidavit of plain-
> tiff's doctor was competent and persuasive, but not conclusive; the doctor's
> patient history, operative report, and hospital discharge summary estab-
> lished that plaintiff's acute symptoms began after his fall, persisted without
> relief after the fall, and were not relieved by disc surgery; the doctor's own
> evaluation of plaintiff was cautious and qualified as to the cause of his pain
> and disability; and plaintiff's own testimony that, prior to his fall, he had
> suffered from discomforting but not disabling back problems, but that after
> the fall the severity of his pain was sufficient to disable him was also compe-
> tent for the jury to consider and weigh as to the cause of his disability.

APPEAL by plaintiff from *Roda, Judge.* Judgment entered 2
June 1980 in District Court, BUNCOMBE County. Heard in the
Court of Appeals 10 February 1981.

This is an action upon a group accident insurance policy
issued by defendant through plaintiff's employer. The policy
provides coverage "against loss resulting directly, indepen-
dently, and exclusively of all other causes from bodily injuries
effected solely by accident" and specifically excludes coverage
of "any loss caused directly or indirectly by disease (insect
borne or otherwise) or bodily or mental infirmity, or medical or
surgical treatment or diagnostic procedure therefore." Plain-
tiff, a 53 year old meatcutter, alleged that on 15 November 1977
while at work, he slipped on a wet floor, fell on his back, and, as a
direct result of this accidental injury became totally disabled.

Defendant answered admitting plaintiff's accidental in-
jury, but alleging that plaintiff's disability was not caused
directly, independently, and exclusively by the bodily injury he
received in the fall of 15 November. Defendant alleged that

plaintiff's disability, if any, was caused either directly or indirectly by long-standing infirmities of plaintiff's back, which infirmities were merely aggravated by plaintiff's fall.

Defendant moved for summary judgment. In support of its motion, defendant offered the affidavit of plaintiff's physician, which stated:

> WILLIAM J. CALLISON, being first sworn, deposes and says that he is a medical doctor, licensed to practice medicine in the State of North Carolina, specializing in orthopedic surgery; that attached hereto are copies of records from St. Joseph's Hospital, signed by me, concerning treatment given there to Charles Troy McGee; that the patient, Charles Troy McGee, sustained a fall on November 15, 1977, according to the medical history; that the patient's disability thereafter was not a result exclusively of the fall injury that he sustained on November 15, 1977, but was rather the result of the injury therefrom being superimposed upon, or an aggravation of, the patient's pre-existing back problems and degenerative disc disease; that as stated in hospital records, Mr. McGee gave a past history of back pain going back for many years; that Mr. McGee described a back injury in World War II when he was in the Navy, having slipped and fallen, striking the end of his spine, that since then the patient reported having experienced recurrent attacks of low back pain briefly requiring osteopathic manipulations; that prior to his fall on November 15, 1977, Mr. McGee had been followed as an outpatient at a Veterans Administration Hospital, receiving medications and taking hot tubs soaks at night with only minimal relief.

Defendant also offered copies of plaintiff's medical records which described in detail plaintiff's medical treatment including plaintiff's laminectomy operation performed on 22 February 1978.

In response, plaintiff offered his own affidavit, stating:

> I am the Plaintiff in the above captioned cause. In December of 1943, while in the Navy and working aboard ship, I slipped and fell on the floor, landing in a sitting position and injured my tailbone, otherwise known as the

coccyx. After experiencing intermittent problems with my tailbone area, in 1944 I received surgery to remove a cyst on my tailbone. Shortly following such surgery, I experienced no further problems or pain in my tailbone area. At the time of my tailbone injury, I had experienced no other problems with my back. I furthermore experienced no further problems with my low back until November 15, 1977.

While living in Florida, I experienced some pain in my middle back area at a place well above the L-4 level and went to an Osteopath for treatment. The manipulations which I received cured the pain and I experienced no further problems with this area of my back.

In 1976, I experienced pain and numbness in both legs. Upon seeking treatment at the VA Hospital in Asheville, North Carolina, I received medication for this problem and was told to take hot tub soaks at night, which I did. This pain and numbness in my legs at no time prevented me from working regular hours.

On November 15, 1977, at 7:30 A.M., while carrying meat at Ingles Markets, Inc. in the course of my employment as a meatcutter, I slipped on some water on the floor. My feet flew out from under me and I landed flat on my back. I immediately experienced severe pain in the lower one-half of my back, which pain later became localized to the L-4 — L-5 area. I had never experienced pain of this type in nor any problems with this particular area of my back. I was admitted to the hospital for two weeks and was treated conservatively by Dr. William J. Callison, and was later readmitted for a laminectomy at L-4 — L-5 which Dr. Callison performed. The severe pain in this area was not diminished and still persists.

Except for the problems caused by my tailbone injuries as described above, I had never before been unable to work because of any physical problems or infirmities until my accident on November 15, 1977. Since that time, I have been unable to work because of the severe pain the the L-4 — L-5 area of my back. I have been drawing disability payments from Social Security as the result of the November 15, 1977 accident, and am still unable to work.

McGee v. Insurance Co.

The trial judge granted defendant's motion for summary judgment and plaintiff has appealed.

*Penland & Barden, by Talmage Penland, for plaintiff appellant.*

*Womble, Carlyle, Sandridge & Rice, by Allan R. Gitter and James M. Stanley, Jr., for defendant appellee.*

WELLS, Judge.

The rules as to summary judgment have been previously and adequately established and explained by our appellate courts and need not be repeated here. *See Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 469-70, 251 S.E. 2d 419, 421-22 (1979). We hold that the forecast of evidence presented by the materials before the trial court discloses a triable issue of fact and that summary judgment was improvidently entered.

The dispositive issue in this appeal is whether the medical evidence forecast by defendant in the affidavit of Dr. Callison is conclusive as to the direct, independent and exclusive cause of plaintiff's disability, or, stated in the alternative, whether plaintiff's lay testimony is competent to establish such causation. Relying on the opinion of our Supreme Court in *Gillikin v. Burbage*, 263 N.C. 317, 139 S.E. 2d 753 (1965), defendant contends that plaintiff's affidavit is insufficient as a matter of law to rebut Dr. Callison's opinion as to the cause of plaintiff's disability, and that the case *sub judice* presents a situation where expert medical testimony is essential to establish causation as defined in the policy. *Gillikin* was a negligence case where plaintiff attempted to establish a blow from a car door as the cause of her injury. The opinion of the Court was posited on whether plaintiff's evidence was sufficient to show that the blow from the car door had caused a ruptured disc. We quote in pertinent part:

In this record there is not a scintilla of medical evidence that plaintiff's ruptured disc might, with reasonable probability, have resulted from the accident on June 12, 1962. "If it is not reasonably probable, as a scientific fact, that a particular effect is capable of production by a given cause, and the witness (expert) so indicates, the evidence is not sufficient to establish *prima facie* the causal relation, and if the testimony is offered by the party having the

burden of showing the causal relation, the testimony, upon objection, should not be admitted and, if admitted, should be stricken." *Lockwood v. McCaskill,* 262 N.C. 663, 138 S.E. 2d 541, 545.

263 N.C. at 324, 139 S.E. 2d at 759.

In contrast to the precise situation dealt with in *Gillikin,* our appellate courts have frequently stated the rule that there are many instances in which lay testimony is competent to establish cause of injury (or death). *See, e.g., Williams v. Insurance Co.,* 288 N.C. 338, 218 S.E. 2d 368 (1975); *Tickle v. Insulating Co.,* 8 N.C. App. 5, 173 S.E. 2d 491 (1970), *cert. denied,* 276 N.C. 728 (1970); *Jordan v. Glickman,* 219 N.C. 388, 14 S.E. 2d 40 (1941) and cases cited therein. *Cf., Click v. Freight Carriers,* 300 N.C. 164, 265 S.E. 2d 389 (1980); *Soles v. Farm Equipment Co.,* 8 N.C. App. 658, 175 S.E. 2d 339 (1970). In the case *sub judice,* Dr. Callison's expert opinion testimony is clearly competent and persuasive, but it is not conclusive. Plaintiff's testimony that prior to his fall, he had suffered from discomforting but not disabling back problems, but that after the fall the severity of his pain was sufficient to disable him, is also competent for the jury to consider and weigh as to the cause of his disability. *See Soles v. Farm Equipment Co., supra.* It provides far more than a mere scintilla. It is evidence which might reasonably satisfy an impartial mind as to the sole cause of plaintiff's disability. *See* 2 Stansbury's N.C. Evidence § 210, at 152-53 (Brandis rev. 1973).

We also note with interest that in this particular fact situation, defendant's position is substantially weakened by information and statements contained in plaintiff's medical records introduced by defendant. Dr. Callison's patient history, operative report, and hospital discharge summary establish that plaintiff's acute symptoms began after his fall, persisted without relief after the fall, and were not relieved by disc surgery. Dr. Callison's own evaluation of plaintiff was cautious and qualified as to the cause of his pain and disability. His hospital discharge summary contained the following statements:

The patient had sustained a fall on 11/15/77 while working as a meat cutter in Ingle's Super Market and at that time developed accentuation of low back pain and associated rt. sciatica. He did not respond to conservative treat-

ment at home and was subsequently admitted to St. Joseph's Hospital on 11/22/77 where he remained until 12/23/77. During this extended hospital stay he was treated with rest, traction, PT and medication without significant relief. He was seen in consultation by Dr. Alexander Maitland and Dr. Nelson Watts who failed to find any neurological or medical explanation of his persistence of severe right sciatica. Lumbar myelogram was performed at that time which showed some slight asymmetry of nerve root at L4, L5 on the right with a spinal fluid protein of 72 mgs. percent. An epidural venogram showed a complete block at L4, L5 and L5-S1 on the right. However, because of the paucity of objective physical findings, I was very reluctant to advise surgical intervention. He was seen in neurosurgical consultation by Dr. Van Blaricom who agreed there was some functional overlay to the problem. He was given an intrathecal injection of Marcaine with no significant improvement.

Accordingly, he was discharged home to continue conservative treatment at home. However, he failed to show any improvement and over the following week continued to have disabling and unrelenting right sciatica.

The patient was advised that we were at a stalemate as far as his treatment program was concerned with very little else in a positive aggressive nature to offer him other than an exploratory procedure to look at the L4, L5 nerve roots on the right. This was felt to be justified in spite of the physical findings because of his failure to respond to conservative treatment and the abnormal myelogram and epidural venogram findings with the elevated spinal fluid protein. However, a cautious prognosis was offered and the patient was advised very frankly that it was possible he could have surgery with no significant relief.

The patient was then admitted to the hospital on 2/21/78 and was taken to surgery on 2/22/78 with a hemilaminectomy being performed at L4 and L5 on the right. The only old firm annular bulges were found at L4 and L5. Both discs were opened and only a few fragments of nucleus could be removed. The L3 disc space was also explored but the disc was not opened at this level.

Following surgery the patient's wounds healed nicely and he had an uneventful postoperative course. He remained afebrile. However, he experienced absolutely no relief of his right sciatica which persisted following surgery in a severe unrelenting manner. ...

It would thus appear that Dr. Callison's evaluation of plaintiff when considered in relation to the cause of plaintiff's disability might be susceptible of differing inferences by a jury, and thus indicate a need for cross-examination of Dr. Callison on this point. *See Kidd v. Early*, 289 N.C. 343, 370, 222 S.E. 2d 392, 410 (1976).

Defendant also contends that *Horn v. Insurance Co.*, 265 N.C. 157, 143 S.E. 2d 70 (1965); *Hicks v. Insurance Co.*, 29 N.C. App. 561, 225 S.E. 2d 164 (1976); and *Hooks v. Insurance Co.*, 43 N.C. App. 606, 259 S.E. 2d 567 (1979) contain the controlling rules of law as to accident insurance policies similar to the policy in the case *sub judice*, and require our affirmance of the judgment below. We cannot agree. *Horn* is distinguishable on the facts, as clearly indicated in the Court's opinion. We quote the dispositive portion.

Plaintiff, in § 14 of his complaint, alleged insured suffered shock, blows and injuries which "caused his heart to stop beating and caused his death." The evidence supports the allegation that the immediate cause of death was the failure of the heart to perform its normal function. The evidence is sufficient to support a finding that the shock of excitement created by running off the road and striking the tree caused a strain on the heart and blood vessels, which they, *because of the diseased condition*, could not stand. This is as far as the evidence will warrant a factual finding. ...

(Emphasis supplied.) 265 N.C. at 164, 143 S.E. 2d at 75-76. In *Horn*, there was no evidence that the accident could have been the sole cause of death.

*Hicks* is also not in point. In that case this Court held that plaintiff's evidence in opposition to defendant's motion for summary judgment raised only the inference that the decedent's fall *contributed* to the cause of death. In the case *sub judice*, plaintiff's evidence supports an inference that the fall was the *sole* cause of his disability.

*Hooks* is not in point because in that case, this Court found that *"all* the evidence is to the effect that the ... accident was not the sole cause of plaintiff's disability." (Emphasis supplied.) 43 N.C. App. at 611, 259 S.E. 2d at 570.

We also note that plaintiff's position in the case *sub judice* is supported by the opinion of this Court in *Emanuel v. Insurance Co.*, 35 N.C. App. 435, 242 S.E. 2d 381 (1978), to the effect that a question of fact exists in this case as to whether plaintiff's previous back problems were so severe as to be classified as a "disease" within the meaning of the policy. *Id.*, at 442, 242 S.E. 2d at 385. Following the reasoning of *Emanuel*, we believe that in the case *sub judice*, in determining whether the fall was the sole cause of plaintiff's disability within the meaning of the policy, it would be for the jury to consider the following factors: the seriousness of plaintiff's fall; his general health before the fall; and, the evidence as to the degree of disc degeneration before the fall.

The judgment of the trial court is

Reversed.

Judges VAUGHN and BECTON concur.