[No. 1815, April 29, 1916.] ·

## MORIARITY v. MEYER et al.

### SYLLABUS BY THE COURT.

1. A corporation is not liable on contracts made by its promoters before it is incorporated, in the absence of an adoption thereof by it.

P. 523

2. An adoption by a corporation of contracts made in its behalf by promoters before its incorporation may be express or implied. Where the corporation receives the benefits thereof, with full knowledge of the facts, an implied adoption by way of estoppel takes place.

P. 524

3. Whether the doing of certain acts by an officer of a corporation after its incorporation was with intent to adopt the promoter's contract or not is a question of fact for the determination of the jury.　　P. 528

4. Where the findings of the trial court are supported by substantial evidence, the same will not be disturbed on appeal.

P. 528

Appeal from District Court, Bernalillo County; H. F. Raynolds, Judge.

Action by M. T. Moriarity against Julius Meyer and another. From a judgment for defendants, plaintiff appeals. Affirmed.

MARRON & WOOD of Albuquerque, for appellant.

The transaction between the parties created relation of landlord and tenant. Promoter's contract was adopted by corporation.

Cook on Corps., sec. 707; Wall v. Niagara Co., 59 Pac. 399; Whitney v. Wyman, 101 U. S. 392; 2 Cook on Corps., p. 715.

CATRON & CATRON of Santa Fé, for appellees.

The trial court found that no relation of landlord and tenant existed between the parties, and such finding, being supported by substantial evidence, will not be disturbed by the appellate court.

Pecos Valley Imm. Co. v. Cecil, 99 Pac. (N. M.) 695; Gale v. Farr, 11 N. M. 211, 66 Pac. 520.

### OPINION OF THE COURT.

PARKER, J.—This is an appeal from the district court for the county of Bernalillo. The case was tried to the court without a jury. Appellant assigns thirty-one grounds of error, and argues three general propositions before this court. Excluding questions concerning certain findings and requested findings, which will be dealt with hereafter, this case turns upon the single question as to whether or not the relation of landlord and tenant existed between the appellant and the People's Savings Bank of Moriarity, so that the foreclosure of an alleged landlord's lien resulted in divesting the bank of title in a certain banker's safe and vesting same in appellant. It is admitted on both sides that the banker's safe referred to was the property of the People's Savings Bank of Moriarity, in the first instance. From the evidence it appears that in the latter part of March, 1909, a meeting of citizens was held in the town of Moriarity, the object of which was to promote the institution of a bank at Moriarity. N. A. Perry, A. J. Green, C. L. Lease, M. T. Moriarity, together with many of the citizens of Moriarity,

attended that meeting. It was there agreed that a banking corporation should be organized for the purpose of doing business in Moriarity, and that appellant should become the president and C. L. Lease the cashier thereof. The general scheme of the meeting included the making of an agreement between those present that certain of them would subscribe to the capital stock of the proposed corporation. Those present at the meeting also resolved that N. A. Perry and C. L. Lease should enter into a contract of lease of certain premises with M. T. Moriarity, the owner, presumably in order that the proposed bank might be assured of business quarters when it came into existence. At that time and place a verbal agreement of lease was made between those parties. So far as the evidence discloses the fact, this was the first, last, and only meeting held by these parties wherein the proposition of opening a bank was ever discussed. In April, 1909, articles of incorporation of the "People's Savings Bank of Moriarity" were filed with the then secretary of the territory, wherein N. A. Perry was named as president and A. J. Green as cashier, rather than M. T. Moriarity, as president and C. L. Lease as cashier. C. L. Lease was named as statutory agent for the purpose of service, of process. Subsequently a banker's safe was installed in the premises leased by Perry and Lease from Moriarity by Lease, who acted under the directions of Perry. This safe, as we have heretofore said, was the property of the bank. The key to the premises had been delivered to Lease by Moriarity at the meeting of the citizens before the incorporation of the bank.

[1] The trial court found that the relation of landlord and tenant never existed between Moriarity, on the one hand, and the corporate bank, on the other, and that therefore an attempted divestiture of title by a sale made in pursuance of the landlord's lien statutes of this state was unavailing, so far as the bank, the owner of the safe, was concerned. The appellant contends that the transaction between the parties created the relation of landlord and tenant, while appellees contend that such tran-

saction did not constitute any such relation, and that, if it did, the relation was destroyed by the act of the appellant in subsequently leasing the premises to a third person. In the first place, it may be said that at the time the lease was made between appellant and Perry and Lease the corporate bank was not in existence. Perry and Lease were therefore not the agents of the corporation, nor was the lease binding upon the corporation when it came into existence, unless it adopted the same, either expressly or impliedly. The rule, which is fundamental, is stated in 1 Thompson on Corporations (2d ed.) at section 91, as follows:

"A corporation has no life and consequently no power until it is legally organized, with authorized officers and agents to conduct and manage its business; hence it cannot authorize promoters to enter into contracts on its behalf, and it logically follows that the corporation after its organization cannot be held liable on any contract made by the promoters in the absence of adoption or ratification. * * *"

To the same effect see 2 Purdy's Beach on Private Corp. § 812; 1 Clark & Marshall on Private Corps. § 101; and 7 R. C. L., p. 80. The doctrine is laid down in cases too numerous for citation.

[2]  Adoption takes place in but two well-defined cases, viz., expressly, as by resolution of the corporation or admission or agreement of an authorized officer or agent thereof, and impliedly, by act or conduct amounting to assumption of the contractual obligation. While some courts and text-writers assert that a third kind of adoption results from receiving the benefits of the contract, with full knowledge of the facts, that phase of the question should be properly treated under the head of implied adoption; for it is simply adoption by act or conduct amounting to estoppel. Other courts and text-writers treat negotiations between the promoter and third persons, made for the benefit or advantage of a corporation when it becomes organized, as an offer to the corporation, and when accepted by it one author, at least, treats the act as a novation, whereby the corporation assumes the place previously occupied by the promoter.

In 7 R. C. L., at page 82, it is said:

"To render the contract of the promoters binding on the corporation it is not necessary that its adoption should be express; it may be shown from acts or acquiescence of the corporation or its authorized agents, as any similar contract may be, and, if the corporation subsequently recognizes and treats such contract as valid, this makes it in all respects what it would have been if the requisite corporate power had existed when it was entered into. And as a general rule adoption or ratification results from the acceptance by the corporation after its organization of the benefits of the contract; having exercised rights and enjoyed benefits secured to it by the terms of a contract made by its promoters in its behalf a corporation should be held estopped to deny its validity. * * * * The benefits of a contract are the advantages which result to either party from a performance by the other; and in like manner its burdens are such as its terms impose."

See, also, 1 Mechem on Agency (2d ed.) § 382; 1 Thompson on Corporations (2d ed.) § 99.

In 1 Clark & Marshall on Private Corporations, § 101, c. 2, p. 309, it is said:

"The ratification or adoption by corporations of a contract made by its promoters need not necessarily be by formal vote of the stockholders or directors, unless it is so required by its charter, but may be implied from any conduct on the part of its stockholders or officers—provided they have the requisite authority to bind the corporation—which shows an intention to adopt and be bound by the contract. * * *"

Speaking of the contracts of promoters in 1 Elliott on Contracts, at section 555, it is said:

"* * * They cannot bind the corporation by their contracts made before the organization of the company, except so far as it adopts or ratifies their acts either directly, or in some cases by accepting the benefits of contracts made for it, and impliedly adopting it, for the reason that a corporation cannot be a party to a contract made before its organization."

In 1 Mechem on Agency (2d ed.) the theory of novation is discussed. The author, at section 381, says:

"There may undoubtedly in such a case be a novation. That is, the corporation and the parties to the contract may mutually agree that the corporation shall be substituted in place of the promoter; and this may doubtless be done by implication as well as in express terms. The difficulty in most cases is to find any evidence of such a novation."

From what has been said it is plain that a contract made between a promoter and a third party may be assumed or adopted by the corporation,. and that, where the corporation receives benefits from such contract, with full knowledge of the facts, it is estopped to deny the validity of the contract or the fact that it is bound thereby. The difficulty lies in an application of the doctrine to the facts of each case. In the case at bar reliance is placed upon all the facts in evidence as showing the application of the rule, but most especially upon the fact that the lease was made to inure to the benefit of the corporation when it should come into being, and having come into being, and utilized the premises for the purpose of placing therein its banker's safe, it cannot now be heard to deny its liability thereon.

In Central Trust Co., etc., v. Lappe, 216 Pa. 549, 65 Atl. 1111, it was held that the corporation had adopted a contract of lease made by its promoter because of the fact that after the organization of the corporation it passed a resolution authorizing a third person, a member of the board of directors, to dispose of the lease, and this, together with other facts, more or less complicated, was held to constitute an acceptance of the standing offer of the lessor to the corporation.

In Kaeppler v. Redfield Creamery Co., 12 S. D. 484, 81 N. W. 907, it was held that the agreement of the president of the defendant corporation to pay plaintiff for labor done and materials furnished under contract with a promoter of the company, together with the fact that the corporation had used the materials and received the benefit of them, as well as the labor of the plaintiff, constituted an adoption of the contract.

In Chase v. Redfield Creamery Co., 12 S. D. 529, 81 N. W. 951, the action was for the recovery of back rent for premises leased to the Mellette Creamery Company, a corporation, and for rent accruing during the occupancy of the premises by the defendant company. The Mellette Creamery Company being unsuccessful in its business, a promoter of the defendant company, which

last-named company was not then in existence, agreed with the plaintiff that the back rent would be assumed by the new corporation and a lease would be taken on said premises. Subsequently the defendant company was organized and possession taken by it of said premises and kept for a period of four months, during all of which time it carried on its corporate business therein. The court held that the conduct of the defendant amounted to an adoption of the contract of the promoter, and that the knowledge of the promoter, who was also the president of the defendant company, was knowledge of the defendant corporation.

In Whitney v. Wyman, 101 U. S. 392, 25 L. Ed. 1050, the fact that the corporation, one of the defendants, received the machinery ordered by its promoters and carried on its business of manufacturing baskets with the aid of such machinery, was held to amount to a recognition of the contract and an adoption thereof. The additional fact also appears that the corporation, after its organization, authorized two of its directors to settle with plaintiff for the sale of the machinery.

In Weatherford, etc., Ry. Co. v. Granger, 86 Tex. 350, 24 S. W. 795, 40 Am. St. Rep. 837, Granger sought to recover a sum of money from the railway company for services rendered both before and after the organization of the corporation. The services rendered were for raising a bonus and for legal advice and assistance. It was held that plaintiff could not recover for the services rendered before the organization of the company. The court declared that the notice of the principal promoter, and the person at whose directions the services were rendered, before organization of the corporation, although he subsequently became a director of the corporation, did not constitute notice to the corporation. The court also remarked that the doctrine of ratification merely by accepting the benefits of the plaintiff's labor did not meet its approval.

Adoption was held to have been made in the following cases: McArthur v. Times Printing Co., 48 Minn.

319, 51 N. W. 216, 31 Am. St. Rep. 653 (receiving services of solicitor for several months after organization); Smith v. Parker, 148 Ind. 45 N. E. 770 (manufacturing articles under patent right assigned to it); Pittsburg & Tenn. Copper Co. v. Quintrell, 91 Tenn. 693, 20 S. W. 248 (employing plaintiff and receiving his services with knowledge of previous contract between him and promoter); Bommer v. Am. Spiral, etc., Co., 81 N. Y. 468 (manufacturing article under patent right assigned to it); Wall v. Mining & Smelting Co., 20 Utah, 474, 59 Pac. 399 (accepting lands under conveyance and retaining benefits thereof); Seymour v. S. F. C. Ass'n, 144 N. Y. 333, 39 N. E. 365, 26 L. R. A. 859 (accepted conveyance of lands and exercised absolute dominion over same); Paxton Cattle Co. v. First National Bank, 21 Neb. 621, 33 N. W. 271, 59 Am. Rep. 852 (corporation received property and went into possession thereof and used and enjoyed same); Van Schaick v. Third Avenue Railroad Co., 49 Barb. (N. Y.) 409 (took an assignment of lease, entered into possession of property, and continued in business therein).

[3, 4] An examination of these cases will disclose that the facts therein were much more favorable for the holding of an implied adoption than are the facts in the case at bar. No point is directly made that Perry had no power to bind the corporation, and therefore we may well assume that he did have power to bind it, and that his knowledge was the knowledge of the corporation. But, notwithstanding such assumption on our part, we are convinced that the facts of this case do not disclose an intention on the part of the corporation to adopt the contract of lease made between Perry and Lease, on the one hand, and Moriarity, on the other. What constitutes ratification or adoption is, no doubt, a question of law. But what the intention of the parties was must be obtained from the facts of the case, and, notwithstanding that there is no dispute of the essential facts in this case on this question, we believe the proposition is generally one of fact for the determination of a jury. This case

was tried by agreement to the court without a jury, and the court, in effect, found that no intention on the part of the corporation to assume the obligation of the promoters ever existed. In Van Schaick v. Third Avenue Railroad Co., 38 N. Y. 346, 353, the court said:

"In the present case it is proved, among other things, that the defendants, having full knowledge * * * of the lease, and of the agreement made in respect to it, with reference to the corporation to be organized, received an assignment, entered into the possession of the demised property, and used and occupied it for many years. Now, I take it that the intent with which this was done is a question of fact rather than a question of law."

In Oakes v. Cattaraugus Water Co., 143 N. Y. 430, 38 N. E. 461, 26 L. R. A. 544, 552, the court said:

"We think this was fairly within his general powers, and, if he intended, in behalf of the corporation which he represented, by calling upon the plaintiff to do the things which he had agreed to do in the writing, to adopt and ratify the agreement made before the incorporation, instead of making a new one, and the plaintiff intended to and did perform for the corporation the things specified in the agreement, there is no good reason why the corporation did not become bound by his action. Whether this was the intention and purpose of the president of the defendant and of the plaintiff was, under the circumstances of the case,' a question of fact which should have been submitted to the jury. Ratification or adoption, which in this case mean the same thing, is largely a question of intention to be determined from facts and circumstances as one of fact, and the court was not warranted, under the circumstances, in disposing of the question as one of law."

We regard the above quotations as applicable to the case at bar. It should be remembered that Perry was not only the named president of the corporation, but was also one of the lessees of the premises. Lease was simply an agent of the corporation for process purposes, and no contention is made, nor could it be successfully urged, that he had power to bind the corporation by anything he might do. The fact of personal liability on the lease on the part of Perry would seem to require clearer proof than that found in the case at bar that his sole act of causing the safe to be placed in premises of which he was then the lessee was the act of the corporation, rather

than the act of himself personally. But we are convinced that the intent flowing from such act, when considered with the other facts and circumstances of this case, was for the determination of the trial court sitting in the place of a jury, and, the trial court having found the issue against appellant, and there being substantial evidence to support such finding, this court will not disturb the same on appeal. Locke v. Murdoch, 20 N. M. 522, 538, 151 Pac. 298.

We might add for the benefit of counsel that, looking at the question as one of law, our conclusion thereon would coincide with the conclusion reached by the trial court.

Points 2 and 3 made by appellant are based upon the supposition that the relation of landlord and tenant existed between the corporate bank and Moriarity, and therefore need not be considered.

Appellant attacks the tenth finding of fact made by the trial court, on the ground that it is not only contrary to the evidence, but manifestly contrary to the admitted facts and the conceded position of the parties. Appellant's argument is that the court found that the appellant was never in possession of the banker's safe, which is contrary to the evidence. The finding bears no such interpretation. The finding is simply to the effect that appellant was not the legal owner of the safe on a certain day, nor entitled to the possession thereof.

Appellant also attacks the eleventh finding made by the court, but does not argue or point out where it is erroneous. He satisfies himself by saying that the inclusion of attorney's fees in the lien foreclosure is immaterial.

Other attacks on the action of the trial court relate to its refusal to give findings requested by appellant, but they need not be considered, because of our decision herein on the controlling question of the case. No relation of landlord and tenant having ever existed between the bank and the appellant, the court properly refused to make findings of a contrary nature.

New Mexico-Colorado Coal & M. Co. v. Baker, 21 N. M. 531.

No error appearing in the record, the judgment of the trial court will be affirmed; and it is so ordered.

ROBERTS, C. J., concurs.

HANNA, J., did not participate in the opinion.

[No. 1822, February 23, 1916.]
[On Rehearing, March 14, 1916.]