RUBY L. TAYLOR v. LUTZ-YELTON HEATING & AIR CONDITIONING CORP.

No. 7827SC1114

(Filed 2 October 1979)

**Negligence § 29.1— furnace workmen—leaving unguarded hole in floor—evidence sufficient for jury**

In an action to recover for injuries sustained by plaintiff when she fell through an unguarded opening in the floor of the hallway of her home created when defendant's employees removed a furnace grille from the floor, the trial court erred in entering summary judgment for defendant where plaintiff's evidence raised a genuine issue as to whether defendant breached its duty of care by leaving an open hole in the darkened hallway without warning plaintiff thereof and by directing her attention away from the hole when an employee of defendant called her to find out if the placement of the wall register in the bathroom was satisfactory, and whether such negligence, if any, was a proximate cause of plaintiff's injuries.

APPEAL by plaintiff from *Kirby, Judge.* Judgment entered 14 September 1978 in Superior Court, CLEVELAND County. Heard in the Court of Appeals on 30 August 1979.

In this action for damages for personal injuries, plaintiff charges that the negligence of defendant's employees proximately caused her fall through an unguarded opening in the floor of the hallway of her home. Her complaint asserts they were negligent in that they:

(a) Failed to inform or otherwise notify plaintiff, prior to removing the metal furnace grille from over the space or hole in the central hallway of her residence, of their intention to remove the same, when they knew, or in the exercise of reasonable care, should have known that plaintiff would likely pass through said hallway as she moved about her house;

(b) Failed to inform or otherwise notify or warn plaintiff of the fact that they had removed the metal furnace grille from over the space or hole in the floor of said hallway, when they knew or should have known, in the exercise of reasonable care, that plaintiff was not informed or aware of such fact and that she would likely pass through said hallway as she moved about her house;

(c) Failed to place any guard rail or other protective barrier or warning device, sign or signal around the open space

or hole in the floor of the hallway, after removing the grille therefrom, when they knew, or should have known by the exercise of reasonable care, that plaintiff would likely pass through said hallway as she moved about her house;

(d) Failed to notify or otherwise warn plaintiff about the aforesaid dangerous condition created by them in the hallway, prior to requesting that she follow one of defendant's said employees from the kitchen through the living room and central hallway to the bathroom, to advise him about the location of the furnace ducts in that room;

(e) Diverted plaintiff's attention from the aforesaid dangerous condition created by them by passing through said hallway ahead of her and calling out to her to come to the bathroom and to assist with the location of the ducts in that room, without first informing her of such condition, when they knew or should have known, in the exercise of reasonable care, that plaintiff was not informed or aware thereof.

(f) Otherwise failed to exercise the care and caution for plaintiff's safety that a reasonable and prudent person would and should have exercised under the same or similar circumstances.

Defendant answered, denying the material allegations in plaintiff's complaint, and pleaded contributory negligence on her part in that:

(a) Although she was aware that work was going on around the area of her floor furnace, she entered that area without looking at the floor, without watching what she was doing and where she was going, and without regard for what was plainly visible in front of her.

(b) She failed to heed or pay attention to the warning that she had been given and the knowledge that she had that the grille had been removed from an opening in the floor of her home; or

(c) She failed to maintain her balance while standing beside an opening in the floor of her home, which opening was plainly visible and of which opening she was well aware; and

(d) She failed to exercise the care and caution for her own safety that a reasonable and prudent person would and should have exercised under the same or similar circumstances.

Defendant then moved for summary judgment and supported its motion with the pleadings and depositions of plaintiff and its employees Leroy Melton and Bill Wray, who were present on the job when plaintiff fell. Subsequent to its motion, defendant filed the affidavit of Wray to "supplement" his deposition.

In opposition, plaintiff filed her affidavit. The court allowed defendant's motion and, from judgment entered for defendant, plaintiff appealed.

*Caudle, Underwood & Kinsey, by Lloyd C. Caudle and Scott C. Gayle, for plaintiff appellant.*

*Golding, Crews, Meekins, Gordon & Gray, by James P. Crews, for defendant appellee.*

HEDRICK, Judge.

The sole question presented on this appeal is whether the court erred in entering summary judgment for defendant. We hold that it did.

The plaintiff alleged and, through her deposition and affidavit, offered evidence tending to prove that she and her husband entered into a contract with the Lutz-Yelton Company in July 1974 whereby Lutz-Yelton was to replace the plaintiff's "old type furnace" with a forced-air central heating system. The work involved removing the old furnace from underneath the house and installing a "larger, more horizontal furnace", which, in turn, required the workmen to go down through an opening in plaintiff's hallway. The opening measured two feet by three feet and was normally covered by a grille. Wall registers through which the heated air would be released were to be installed in each room, but "[t]he same grille was going to be used for the new furnace as a cold air return as it had been used earlier as a place where the heat came out." The living room, bathroom, and two bedrooms opened into the hallway.

Taylor v. Air Conditioning Corp.

On 26 August 1974 three of defendant's employees, including Bill Wray and Leroy Melton, arrived at plaintiff's house to begin the work. Plaintiff said that she "was sewing and doing my work in other rooms of our house and had no occasion to go into either the central hall or bathroom" that morning. By noon, the old furnace had been removed, and one of the workmen had begun digging under the house to enlarge the space for the new furnace. At that time, all three workmen took an hour's break for lunch, during which time plaintiff went to the bathroom and observed that "[t]he floor grille was in place in the hall as usual."

The workmen returned from lunch and resumed work about one o'clock. Plaintiff was in the kitchen with her sister "fixing and eating lunch." Sometime between 3:00 and 3:30 p.m., Wray came to the kitchen door and called her. Plaintiff described the ensuing events as follows:

> Mr. Wray asked me to come and show him where I wanted the register put in the bathroom. He did not say anything about the grille being off the floor opening in the central hall. I got up to walk from the kitchen to the bathroom, following Mr. Wray. It was necessary to go through a door into the living room, and then turn left through a door leading into the central hall. From the kitchen one cannot see into the central hall and bathroom even with doors open.
>
> . . .
>
> [W]hen I turned into the hallway, [Wray] spoke to me and said, "Right here is where we had planned to put the register." When he spoke to me he got my full attention, and the next thing I knew I was standing . . . under the floor — up to my breasts was where I was standing. . . . I don't even remember walking in no hole. I was in there before I knew it. I was looking him in the face the last thing I remember before I found myself in the hole.

Plaintiff further alleged that the hall light was not on and that "[t]he doors leading into the bedrooms from either side of the small hall were closed and without the electric light being on, the hall area is fairly dark." The evidence showed that Wray was standing just inside the bathroom door, "pointing to the spot

where we were going to put the register at the bottom of the wall where it joins the floor."

Summary judgment is recognized as a "drastic remedy" whose use must be accompanied by due regard for its purposes and cautious attention to its requirements so that no one shall be deprived of a trial on a genuine issue of material fact. *Haddock v. Smithson*, 30 N.C. App. 228, 226 S.E. 2d 411, *cert. denied*, 290 N.C. 776, 229 S.E. 2d 32 (1976); *Miller v. Snipes*, 12 N.C. App. 342, 183 S.E. 2d 270, *cert. denied*, 279 N.C. 619, 184 S.E. 2d 883 (1971). When passing on the motion, the pleadings, depositions, and affidavits of the moving party are to be strictly scrutinized, while those of the opposing party are indulgently regarded. *Emanuel v. Colonial Life and Accident Insurance Co.*, 35 N.C. App. 435, 242 S.E. 2d 381 (1978); *Miller v. Snipes, supra.* Only when the papers supporting the movant demonstrate beyond doubt that no triable issue of fact exists, and that the movant is entitled to judgment as a matter of law, will summary judgment be the appropriate remedy. G.S. § 1A-1, Rule 56(c); *Page v. Sloan*, 281 N.C. 697, 190 S.E. 2d 189 (1972).

This Court has observed time and again that summary judgment, though not precluded, is especially inappropriate in negligence cases where the standard of the reasonable man must be applied.

> It is only in the exceptional negligence case that the rule should be invoked . . . because even in a case in which there may be no substantial dispute as to what occurred, it usually remains for the jury, . . . to apply the standard of the reasonably prudent man to the facts of the case in order to determine where the negligence, if any, lay and what was the proximate cause of the aggrieved party's injuries.

*Robinson v. McMahan*, 11 N.C. App. 275, 280, 181 S.E. 2d 147, 150 (1971). *See also Forte v. Dillard Paper Co. of Raleigh, Inc.*, 35 N.C. App. 340, 241 S.E. 2d 394 (1978), and authorities cited therein.

Defendant does not dispute—as, indeed, it seriously could not—that it owed a duty of care to plaintiff. *See, e.g.*, 41 Am. Jur. 2d, *Independent Contractors*, § 48 (1968), where it is said:

> An independent contractor's general undertaking to perform a job carries with it a promise, implied in fact, that the opera-

tion will be conducted in a safe, skilfull, and generally workmanlike manner. . . . Thus, an independent contractor hired by an owner of lands to do work thereon is under a legal duty to exercise ordinary care to render the premises safe for persons lawfully on the premises . . . and is responsible to an occupant of a building who is rightfully on the premises . . . for any wrongful acts that may be committed by the contractor or his employees while the stipulated work is in progress and that result in injury to such occupant. The ground upon which this liability is based is the implied duty which the law casts upon the independent contractor, as the person in charge and in control of the work, to see that the rights of other persons rightfully on the premises are not injuriously affected by the performance of the work.

The pertinent inquiry, then, in the case before us, is whether there is any evidence that defendant was negligent in its activities in plaintiff's home and whether such negligence was a proximate cause of plaintiff's injuries. In our opinion, the record clearly raises a genuine issue as to whether defendant breached its duty of care by leaving an open hole in the darkened hallway without warning plaintiff thereof; by directing her attention away from the hole when Wray called her to find out if the placement of the wall register was satisfactory; and whether such negligence, if any, was a proximate cause of plaintiff's injuries.

We hold that summary judgment for defendant in this negligence case was inappropriate.

Reversed.

Judges VAUGHN and ARNOLD concur.