MIKE F. DeCARLO v. GERRYCO, INC.

No. 7912DC759

(Filed 1 April 1980)

1. **Corporations § 11— adoption of contract—knowledge and acceptance of benefits**
    An adoption occurs when a corporation, after coming into existence, accepts the benefits of a contract made prior to incorporation with full knowledge of the contract's provisions, and the existence of benefits under the contract's terms which are concrete and capable of accruing directly is essential to the finding that an adoption has occurred.

2. **Corporations § 11— adoption of contract—insufficient evidence of benefit to corporation**
    Evidence was insufficient to show that defendant corporation adopted a contract entered into by plaintiff and an individual whereby plaintiff agreed to provide recipes and information regarding the operation of a seafood restaurant in exchange for a percentage of the profits from the individual's restaurant, though evidence tending to show that the individual assigned his interests in the restaurant to defendant corporation and became its first president was sufficient to show that defendant had knowledge of the contract at issue, since the evidence that plaintiff did not give defendant any recipes or information regarding the operation of its business but at most was simply available to defendant to provide such services if and when defendant requested his aid was insufficient to show that defendant accepted the contract's benefits.

APPEAL by defendant from *Cherry, Judge.* Judgment entered 1 June 1979 in District Court, CUMBERLAND County. Heard in the Court of Appeals on 28 February 1980.

This is an action on a written contract wherein plaintiff claims that defendant owes him two percent of its gross sales for

the last quarter of 1977 and the first and second quarters of 1978. In a verified complaint filed 30 June 1978 plaintiff alleged that the money is due him by virtue of the terms of a contract he entered into with Joe Brooks on 15 February 1972. That instrument provides in pertinent part as follows:

THAT WHEREAS party of the second part [plaintiff] is now and has been for a number of years involved in the retail seafood business . . . and over such period of time has developed certain processes and skills in the preparation and dispensing of seafood; and

WHEREAS party of the first part [Joe Brooks] has opened a seafood restaurant under the title and trade name of 220 Seafood Restaurant in Guilford County, North Carolina, and party of the first part has requested that party of the second part divulge to him recipes, methods of doing business and other skills and experience which he has acquired in the seafood restaurant business and in exchange therefor has agreed to pay to party of the second part two percent (2%) of the gross sales derived by party of the first part from the operation of the 220 Seafood Restaurant which he proposes to open and operate in Guilford County, North Carolina, and party of the second part has agreed to do so and further has agreed to be available for future consultation with party of the first part; however, party of the second part shall not be obligated to devote any of his time directly to such business; . . .

[T]he parties agree as follows:

1. That party of the second part shall make available to party of the first part recipes, methods of doing business, and other skills which he has acquired to be used exclusively by party of the first part in the operation of 220 Seafood Restaurant.

2. That party of the first part shall pay to party of the second part as compensation for such services two percent (2%) of the gross sales derived by him from the operation of said business, said two percent (2%) to be payable quarterly, . . .

3. That party of the second part shall be available for consultation with party of the first part periodically concern-

DeCarlo v. Gerryco, Inc.

ing the operation of said restaurant and meal preparation and shall advise party of the first part concerning general operation of said business, and in the event that said business shall expand, incorporate or move to a different location or further in the event that party of the first part (Brooks) should become involved as owner, stockholder or employee of any other seafood restaurant or seafood business, . . . the percentages herein stipulated to be paid by party of the first part shall be due and payable for such other business.

Thereafter, Brooks became involved in franchising the business and, on 2 April 1976, he and plaintiff amended their agreement to provide that plaintiff would share in the gross receipts of one of the franchise operations. The parties also added the following paragraph:

2. That in the event that party of the first part shall sell, assign or transfer his ownership in and to the 220 Seafood Restaurant in Greensboro, North Carolina, the sum herein stipulated to be paid shall become an obligation upon the purchaser, assignee or transferee of such business whether the same be assigned, transferred or bought by an individual, partnership or corporation, the amount to be paid by said party of the first part to party of the second part shall become an obligation of such successor to the same extent as party of the first part hereunder.

Plaintiff alleged on information and belief that Brooks had assigned all his "rights, title and interest" in the restaurant located in Guilford County to the defendant, Gerryco, Inc. He claimed that the contract between him and Brooks was binding on defendant, but that defendant had refused to pay any "franchise fees" since 31 August 1977.

Defendant filed answer wherein it admitted that it is the owner and operator of the 220 Seafood Restaurant in Guilford County and that Joe Brooks no longer owned any interest therein, but denied that the contract between plaintiff and Brooks was binding on it.

Two sets of interrogatories subsequently filed by plaintiff established the following facts:

---

Gerryco, Inc., was incorporated on 29 March 1976, and *Joe* Brooks was elected its first president, serving from 15 April 1976 until 29 April 1978. His wife, Geraldine B. Brooks, is the present president and sole director and shareholder of the corporation. She stated that she had "some vague knowledge" in 1972 about the contract between plaintiff and Joe Brooks, and "some vague knowledge" in 1976 about the amendment, but that she did not become "fully aware of the exact terms and provisions" of their agreement until March or April of 1978. She recalled signing a check in the amount of $2,345.59 made to plaintiff which her husband said "was for commissions for March and July of 1977."

Both parties moved for summary judgment. Plaintiff supported his motion with an affidavit wherein he declared that he had "always been available to Joe Brooks and . . . made available to Joe Brooks all of his formulas, recipes, methods of doing business and other valuable information to . . . Brooks when he initially went into business." He further claimed that he had "always been available" to defendant for consultation, but that "neither Joe Brooks nor any employee of Gerryco, Inc. has ever requested [him] to assist in any way in the operation and management of the Seafood Restaurant operated by the Defendant."

In support of its motion, defendant offered the affidavit of Geraldine Brooks, who stated that the defendant has neither requested nor received "any formulas, recipes, methods of doing business or any other information" from plaintiff; that the defendant has never received "information, advice, personal property, real property, money, or anything of value whatever," from plaintiff in the operation of its restaurant; and that the defendant had notified plaintiff on 6 April 1978 that "it would not assume any obligations of the contract between plaintiff and Joe Brooks."

On 4 June 1979 the court entered its Order granting summary judgment for the plaintiff and ordering that plaintiff recover of the defendant the sum of $9,585.68. Defendant appealed.

*McCoy, Weaver, Wiggins, Cleveland & Raper, by Richard M. Wiggins, for the plaintiff appellee.*

*Ling & Farran, by Stephen D. Ling, for the defendant appellant.*

HEDRICK, Judge.

Defendant contends that, if either party was entitled to judgment as a matter of law, it was, and thus the court erred in entering summary judgment for the plaintiff.

While summary judgment is recognized as a "drastic remedy" which must be cautiously used, *Taylor v. Lutz-Yelton Heating & Air Conditioning Corp.*, 43 N.C. App. 194, 258 S.E. 2d 399, *cert. denied*, 298 N.C. 809, 262 S.E. 2d 4 (1979), nevertheless, under Rule 56, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law," summary judgment shall be entered. G.S. § 1A-1, Rule 56(c); *Kidd v. Early*, 289 N.C. 343, 222 S.E. 2d 392 (1976). "The judge's role in ruling on a motion for summary judgment is to determine whether any material issues of fact exist that require trial." *Stroup Sheet Metal Works, Inc. v. Heritage, Inc.*, 43 N.C. App. 27, 30, 258 S.E. 2d 77, 79 (1979). The burden of proving that no triable issue of fact exists is on the movant, whose papers are carefully scrutinized while those of the opposing party are indulgently regarded. *North Carolina National Bank v. Gillespie*, 291 N.C. 303, 230 S.E. 2d 375 (1976); *Emanuel v. Colonial Life & Accident Insurance Co.*, 35 N.C. App. 435, 242 S.E. 2d 381 (1978).

We agree with the judge and the parties in the present case that the uncontradicted evidence of record discloses there are no genuine issues of fact to be tried. Thus, the only question before us, as before the trial judge, is which party is entitled to judgment as a matter of law. The trial court concluded that the plaintiff was entitled to judgment as a matter of law. We disagree and hold that summary judgment should have been entered for the defendant.

Defendant argues, and plaintiff concedes, that, since the defendant was not a party to either the original contract or the amendment thereto, the only theory upon which plaintiff could prevail is that of adoption—that is, that the defendant "adopted" as its own the contract entered into by Brooks and plaintiff. Whether a set of uncontroverted facts establishes an adoption is a question of law for the court. *See Moriarity v. Meyer*, 21 N.M. 521, 157 P. 652 (1916).

[1]   An adoption occurs when the corporation, after coming into existence, accepts the benefits of a contract made prior to incorporation with full knowledge of the contract's provisions. R. Robinson, N.C. *Corporation Law*, § 2-4 (2d ed. 1974); *see also* 18 Am. Jur. 2d, *Corporations* §§ 119-123 (1965). The question of whether the corporation had knowledge of the contract is easily determined: If the sole shareholder or the "responsible officers have, or are chargeable with, knowledge" of the agreement, such knowledge will be imputed to the corporation itself. 18 Am. Jur. 2d, *Corporations* § 123 at 665 (1965); *accord, Whitten v. Bob King's AMC/Jeep, Inc.*, 292 N.C. 84, 231 S.E. 2d 891 (1977). When knowledge on the part of the corporate entity is made to appear, then "by accepting the benefits the company becomes bound to perform the obligations incident to [the] contract." *Beachboard v. Southern Railway Co.*, 16 N.C. App. 671, 677, 193 S.E. 2d 577, 581 (1972), *cert. denied*, 283 N.C. 106, 194 S.E. 2d 633 (1973).

[2]   Reference to the record before us establishes beyond peradventure that the defendant corporation is chargeable with knowledge of the contract at issue, as it existed originally and as it was subsequently amended, since the defendant's first president, Joe Brooks, is a party to the instrument. However, the issue of whether the defendant has accepted the contract's benefits is not so readily resolved under the circumstances of this case. Research reveals that the issue most often arises in situations which present, in comparison to this case, clear-cut factual patterns. For example, a promoter of the corporation to be formed enters into a preincorporation agreement with another party to provide initial capital for the enterprise. The promoter thereafter becomes a responsible officer of the company, and the company uses the money advanced by the outside party. In that situation, the corporation will be held to have accepted the benefits of the preincorporation contract, with full knowledge of its provisions. Thus, the company will be liable to perform the obligations incident to the contract. *See Whitten v. Bob King's AMC/Jeep, Inc.*, *supra. See also Chartrand v. Barney's Club, Inc.*, 380 F. 2d 97 (9th Cir. 1967).

Other situations similarly susceptible of relatively ready resolution involve contracts to lease property into which the corporate body ultimately moves; or to buy land which the corporation thereafter uses; or to employ a person in a particular position

at a specified salary whose services the company does indeed use. *See, e.g.,* cases cited at 18 Am. Jur. 2d, *Corporations* § 122 (1965); Annot., 123 A.L.R. 726 (1939); *Smith v. Ford Motor Co.,* 289 N.C. 71, 221 S.E. 2d 282 (1976); *McCrillis v. A & W Enterprises, Inc.,* 270 N.C. 637, 155 S.E. 2d 281 (1967). The benefits available to the corporation in such circumstances are obvious and, when the corporation avails itself of such benefits, it thereby adopts the contract to which they are incident.

[1] Although we have discovered no North Carolina case which treats the question, we believe that the existence of benefits under the contract's terms which are concrete and capable of accruing directly is essential to the finding that an adoption has occurred. At least one other jurisdiction has so held. The rule that a corporation which accepts the benefits of a contract, with knowledge of the contract, must also assume the burdens does not apply to a case in which the corporation receives "no direct, tangible benefits." *Williams v. McNally,* 39 Wy. 130, 139, 270 P. 411, 414 (1928). In *Williams,* a promoter of the corporation to be formed entered into a contract with plaintiff whereby he promised to pay plaintiff's expenses incurred in work on behalf of the prospective company. Plaintiff actually performed certain services, especially in promoting the company to others and in seeking subscriptions to shares. After the company incorporated, he submitted his bill for expenses arising out of those activities. The court found that the benefits, if any, to the corporation were too indirect and intangible, and thus the corporation could not be said to have "accepted" benefits.

[2] Plaintiff in the case before us has presented an even weaker example of benefits which this defendant could be deemed to have accepted. He has produced no evidence that he provided the defendant with any recipes or formulas for preparing its seafood. The record is devoid of proof that he at any time actually advised defendant or furnished any information regarding the operation of its business. At best, plaintiff has shown that he was "available" to the defendant to provide such services if and when defendant requested his aid. "The benefits of a contract are the advantages which result to either party from a performance by the other." *Moriarity v. Meyer, supra* at 525, 157 P. at 653. *See also Weatherford v. Granger,* 86 Tex. 350, 24 S.W. 795 (1894). Had defendant requested and plaintiff performed any of the services

which he stood ready to perform, the situation would be radically different. We do not think, however, that his availability to provide services affords any direct or tangible benefit to this defendant so as to satisfy the essential element of plaintiff's adoption theory.

We note plaintiff's argument that defendant did make one payment "for commissions for March and July of 1977." That fact does not alter our position that plaintiff has failed to demonstrate the existence of concrete benefits accruing directly to this defendant.

We hold that the trial court erred in entering summary judgment for plaintiff. Accordingly, the summary judgment for plaintiff is reversed, and the cause is remanded to the District Court for the entry of summary judgment for defendant.

Reversed and remanded.

Judges WEBB and WELLS concur.